## AMERICAN NATIONAL BANK OF MACON *v.* FIDELITY AND DEPOSIT COMPANY OF MARYLAND.
## EXCHANGE BANK *v.* FIDELITY AND DEPOSIT CO.

Where the basis of an action is actual fraud, the mere silence of the party committing it is treated as a continuation of the original fraud and as constituting a fraudulent concealment, and the statute of limitations does not begin to run against such right of action until such fraud is discovered, or could have been discovered by the exercise of ordinary care and diligence.

(*a*) Where a right of action exists because of wrongful conduct which does not involve actual fraud, in order to prevent the statute of limitations from running by reason of the fraud of the party committing it, consisting in the concealment of such conduct, there, must be something more than a mere failure, with fraudulent intent, to disclose such conduct, unless there is on the party committing such wrong a duty to make a disclosure thereof by reason of facts and circumstances, or the existence between the parties of a confidential relation.

(*b*) Under the facts and circumstances alleged in the petition as amended, it was the duty of the defendants to make known the breach of trust committed by them in paying funds to the receiver in violation of the order of court; and a failure to disclose such fact, with fraudulent intent, was a fraudulent concealment of the facts giving rise to the cause of action, and tolled the statute of limitations.

Argued May 25, 1908.—Decided February 12, 1909.

Equitable petition. Before Judge Hodges. Bibb superior court. January 13, 1908.

These cases, with only a few exceptions, the material ones being hereinafter designated, are practically identical in their facts, and will be considered together. In certain litigation against the Macon Hardware Company, one Tindall was appointed receiver of that company, and several banks, including the defendants, were named by the court as depositories in which Tindall should deposit the funds coming into his hands as receiver, the deposits being accepted by the banks subject to an order of the court that checks of the receiver (except such as showed on their face that they were drawn for expenses connected with the receivership) should not be paid unless countersigned by the court. Part of the funds were paid by the bank to the receiver on checks not drawn and signed in conformity to the requirement of this order, and the amounts thus obtained by the receiver were misappropriated by him. The defendant in error was surety on the bond of the receiver, and, having paid to the clerk of court, for the benefit of creditors, the amount

of the misappropriation, upon a judgment therefor recovered in a suit by the creditors upon the bond, brought the present action against the banks to recover the amounts so paid, claiming that they became liable to it as surety by reason of having aided the receiver in committing his breach of trust. The cases were previously before this court, the decision therein being reported in 129 *Ga.*, p. 126, to which case reference is made for a fuller statement of the allegations of the original petitions. In that case it was held that the banks had committed a tort which rendered them liable to the surety, the latter, by reason of the payment of the amount misappropriated, having become subrogated to the rights of the creditors of the hardware company; but it was further held that the cause of action was complete at the time of the wrongful payment of the checks by the bank, from which time the statute of limitations began to run against the cause of action, and that it was barred, more than four years having elapsed from the date of the last wrongful payment of a check and the bringing of suit. Before the remittitur was entered in the court below, the defendants in error filed two amendments to the original petitions in each of the cases, alleging facts which it was claimed constituted fraud on the part of the defendant banks, which operated to deter or debar the plaintiffs from their cause of action, and tolled the running of the statute of limitations. To the petition as amended the defendants interposed certain demurrers, which were overruled, and the amendments allowed. To this ruling, and to the allowance of the amendments, the defendants excepted.

The plaintiff made in its amendments, among others, substantially the following allegations: On August 31, 1896, the court passed an order wherein the receiver was directed to pay out none of the money in his hands until the further order of the court. The receiver and the banks had notice and knowledge of this order at the time it was entered. $205.00 was drawn from the Exchange Bank by the receiver on unauthorized checks and misappropriated by him prior to the date of this order, but all of the other moneys drawn by the receiver from the two defendant banks were drawn after the date of this order. All of the assets of the hardware company had been converted into cash by the receiver and deposited in the defendant banks and other banks named by the court as depositories for said funds prior to June 1, 1896; and the receiver

had filed his reports in court, pursuant to orders thereof, showing his receipts, deposits, and disbursements of such funds. The last of these reports of the receiver was filed on June 3, 1896, and it appeared from this report that all of such funds that had not been disbursed by him in conformity to the order of the court were on deposit in the banks. The defendant banks had notice of this and the other reports of the receiver. The Exchange Bank knew, at the time of the filing of the report of the receiver on June 3, 1896, that $205 of the funds shown by this report to be on deposit in the Exchange Bank had been misappropriated by the receiver. The defendants never at any time questioned the correctness of the receiver's reports, nor took any steps to have the receiver file other reports after June 3, 1896, and knew that no reports were filed by him between that date and February 22, 1901. The surety company relied upon the report of the receiver, and upon the faith thereof, and upon the fact that the reports were not questioned by the banks or any of the other parties in the case, believed that the funds sued for were on deposit in the banks until the banks filed their report on February 20, 1901. The defendant banks knew that the surety company was relying on the reports of the receiver, and reposed confidence in the defendant banks that they would not improperly disburse the funds. The unauthorized payments by the defendant banks to the receiver were made without the knowledge of the surety company, or the creditors of the hardware company except the defendant banks. The unauthorized checks of the receiver paid by the defendant banks were retained by them, and their existence concealed by them and the receiver from the surety company and the creditors of the hardware company until the filing of the reports of the banks on February 20, 1901, which were filed in obedience to an order of the court requiring the defendant banks to file their reports; nor was there anything to put the surety company or the creditors on notice of the breach of trust by the defendant banks and the misappropriation of the money by the receiver until February 20, 1901. The defendant banks had knowledge of the misappropriation of the money by the receiver, and fraudulently concealed knowledge thereof and of their breach of trust in the unauthorized payment of funds to the receiver from the surety company and the creditors until the filing of the banks' reports on February 20, 1901. The

surety company was debarred and deterred from bringing its action, by such fraudulent concealment by the receiver and the defendant banks, until the discovery of the breach of trust when the banks filed their reports on February 20, 1901.   There was nothing to put the surety company or the creditors on notice of the breach of trust by the banks and the misappropriation of the funds by the receiver, nor could they have discovered the same by the exercise of reasonable diligence prior to February 20, 1901.

*Hardeman, Jones & Johnston* and *Miller, Jones & Miller,* for plaintiffs in error.   *Erwin & Callaway* and *John P. Ross,* contra.

HOLDEN, J.   (After stating the facts.)

1. According to the former decision of the court in these cases, reported in 129 *Ga.* 126 (58 S. E. 867), when the defendant banks paid to the receiver the funds deposited with them under an order of the court, in violation of an order of the court that none of the funds be paid out except on checks countersigned by the court, unless the checks showed on their face that they were drawn for expenses, a right of action arose against the banks in favor of the creditors; and when the surety company on the bond of the receiver, in response to a judgment rendered in a suit thereon, made payments to the creditors to recover the amount thus improperly paid by the banks and misappropriated by the receiver, the surety company became subrogated to the rights of the creditors, and had a right to bring suit against the banks for the amount improperly paid by them and which the surety company afterwards had to pay to the creditors.   It was also ruled that as more than four years elapsed between the time of the last unauthorized payment by the banks and the filing of the suit, the right of action was barred by the statute of limitations.

The question which is here now for decision is whether or not the fraud alleged in the amendments offered by the plaintiff in the court below was sufficient to toll the statute of limitations and prevent the right of action from being barred.   The only act of concealment of a positive nature alleged against the banks is that the unauthorized checks of the receiver paid by the banks were retained by them and their existence concealed.   There is no allegation, however, that this was an unusual thing for banks to do, or that it was the duty of the banks to do anything with these checks except to retain them as alleged.   There is no allegation that they

prevented any one from seeing them, and the only act of concealment alleged in reference to them is that they retained them, without any allegation that it was proper for them to do anything else with the checks except to retain them after they had paid them. A proper construction of the petition as amended is·that the banks did no positive or affirmative act of concealment, but were merely silent as to their own breach of trust and the misappropriation of the funds by the receiver.   The breach of trust on the part of the defendant banks consisted in paying to the receiver funds deposited in bank on checks not countersigned by the court, and in violation of the order of the court.   There is no allegation that the defendant banks made these payments with any fraudulent intent, nor is there any allegation that the defendant banks participated in the misappropriation by the receiver, except to make the unauthorized payments.   The only act of fraud alleged against the banks was fraudulent concealment consisting of mere silence.

If the banks were guilty of an actual fraud by which the creditors, to whose rights the surety company was subrogated, were debarred or deterred from their action against the banks, the period of limitation would run only from the time when the fraud was discovered or could have been discovered by the exercise of ordinary diligence.   The question involved in this case is whether or not the banks were guilty of such fraud as deterred or debarred the creditors from bringing their action.   If the banks were guilty of any such fraud, it consisted merely in silence.   In other words, according to the allegations of the petition it consisted merely in failing, with fraudulent intent, to inform the creditors that they had paid to the receiver the funds on deposit with them, in violation of the order of the court, and of the misappropriation of the same by the receiver.   If the relations between the banks and the creditors, or the facts and circumstances, were such as made it the duty of the banks to inform the creditors of their own breach of trust and the misappropriation of the funds by the receiver, this failure, with fraudulent intent against the creditors, would amount to a fraud which would prevent the statute of limitations from running until the creditors discovered the fraud, or until such time as they could have discovered it by the exercise of ordinary diligence.   If no such duty was imposed on the banks by reason of their relation to the creditors, or by reason of the facts and

circumstances of the case, then their mere silence, as to their un-
authorized acts in paying the funds to the receiver and his mis-
appropriation thereof, would not prevent the statute of limitations
from running.  Mere ignorance of a party that he has a cause of
action will not prevent the statute of limitations from running
from the time the cause of action originates.  Where the basis of
the action is fraud itself, the subsequent silence as to its existence
is regarded as a continuation of the original fraud, and as con-
stituting a fraudulent concealment thereof.  But where the wrong-
ful act of the defendant is not itself fraudulent, as a general rule,
in order for concealment of a cause of action to be fraudulent so
as to prevent the statute of limitations from running, the conceal-
ment must consist in something more than mere silence on the
part of the defendant.  19 Am. & Eng. Enc. Law, pp. 242, 253.
While this is the general rule, there are exceptions to it.  In the
same volume, p. 255, the rule is laid down as follows:  "Where one
sustains towards another a relation of trust and confidence, his
silence when he ought to speak, or his failure to disclose what he
ought to disclose, is as much a fraud in law as an actual affirmative
false representation; mere silence on his part as to a cause of ac-
tion, the facts giving rise to which it is his duty to disclose,
amounts to a fraudulent concealment within the rule under con-
sideration."  Also see, in this connection, 25 Cyc. 1218.  In the
same volume of Cyc. 1222, the following language appears: "But
where the fraud is in the very transaction out of which the cause
of action arises, or the person from whom the right is to be re-
ceived has exclusive or peculiar knowledge of the facts which con-
stitute the cause of action in favor of the adverse party, and there
is a relation of trust or confidence between the parties, by reason
of which it is the duty of the one to disclose to the other the
fact or facts upon which his cause of action or the immediate
right to pursue a particular remedy matures or arises, the omission
to disclose what it is the special duty of defendant to disclose is a
fraudulent concealment."  Civil Code, §4027, is as follows:
"Suppression of a fact material to be known, and which the party
is under an obligation to communicate, constitutes fraud.  The
obligation to communicate may arise from the confidential rela-
tions of the parties, or from the particular circumstances of the
case."  And §4030 is as follows:  "Any relations shall be deemed

confidential, arising from nature or created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another; or where, from similar relation of mutual confidence, the law requires the utmost good faith, such as partners, principal and agent, etc." Were the relations between the bank and the creditors, or were the circumstances of the case, such as to make the failure of the banks to inform the creditors of their unauthorized acts in paying to the receiver the funds and of the misappropriation thereof by the receiver, of which the banks knew, such a fraud on the creditors as would suspend the operation of the statute of limitations, when such concealment on the part of the banks, as alleged in the petition, was fraudulent?

The funds were placed with the banks under an order of court directing that they be not paid out except under certain contingencies. The banks knew of this order. The purpose of placing the funds with the banks, under such an order, was to have the funds in safe-keeping, so that when needed they could be had for distribution among the creditors. The relation between the defendant banks—all of whom were creditors and parties to the suit—towards the other creditors, who were also parties to the suit, was one of trust and confidence. They were all jointly interested in the preservation of the funds which were to be thereafter distributed between them, and which were placed with these two defendant banks, under certain restrictions, in trust, to keep until the time for distribution arrived. The fact of the breach of trust by the defendant banks in paying out the money in violation of the order of court was one peculiarly within their own knowledge and that of the receiver who misappropriated the funds. When the defendants knew that the other creditors jointly interested in the funds believed that the funds were being kept intact by them, and were reposing trust and confidence in the defendant banks to the effect that they would not violate the order of the court in disposing of the funds, it was the duty of the banks to relieve the creditors of the wrongful impression and make known to them the truth of the matter. The facts and circumstances were such as to make it the duty of the banks to disclose their breach of trust and the misappropriation of the funds by the receiver; and their failure to do so, with fraudulent intent, was a fraud which

prevented the statute of limitations from running against the right of action which accrued by reason of such breach of trust and misappropriation of funds by the receiver until the creditors discovered the facts giving rise to their right of action, or could have discovered them by the exercise of ordinary care and diligence. After the banks had committed this wrong in violating the confidence and trust reposed in them, and knew that the other creditors jointly interested in the funds believed that they were still intact in the hands of the banks, it was a fraud to withhold from the other creditors information of the fact which gave rise to the cause of action in their behalf, for the purpose of avoiding the consequences of their wrong and of defrauding the other creditors.

Under the allegations of the petition, the court could not say as a matter of law there was laches, or that by the exercise of ordinary care and diligence the breach of trust committed by the bank and the misappropriation of the funds by the receiver could have been discovered. In this connection see *Kirkley* v. *Sharp,* 98 *Ga.* 484 (25 S. E. 562). The petition as amended alleges that the concealment was with fraudulent intent; and the question as to whether or not such concealment, without fraudulent intent, under all the facts alleged, would prevent the statute of limitations from running, if such concealment deterred the parties from bringing suit and the breach of trust could not have been discovered by the exercise of ordinary diligence, is not before us for decision. The allegations of the petition being that the fraud charged against the banks involved moral turpitude, we do not think it proper to accede to the request of counsel for the plaintiff in error to review the decisions in the cases of *Anderson* v. `Foster,* 112 *Ga.* 270 (37 S. E. 426), and *Maxwell* v. *Walsh,* 117 *Ga.* 467 (43 S. E. 704), wherein it was ruled that fraud which will prevent the statute of limitations from running must be fraud involving moral turpitude.

*Judgment affirmed. All the Justices concur, except*

ATKINSON, J., dissenting. The amendments filed in the trial court since the decision rendered in the cases when they were here on a former occasion (129 *Ga.* 126) do not contain sufficient allegations to relieve the bar of the statute of limitations. The petition is to be construed most strongly against the plaintiff, and there is no allegation that the officers or agents of the bank charged with the duty of paying checks had actual notice of the

intended misapplication of the funds by the receiver at the time his checks were paid, or actual notice of the terms of the order of court under which the deposits were made by the receiver. Nor is there an allegation that any of the officers of the bank had actual notice of the misapplication by the receiver, or of the terms of the order of court, or that, having such notice, they did any act calculated and intended to deceive the court or any of the parties at interest, so as to aid and abet or to become a participant in the misappropriation by the receiver. Nor was it alleged that the bank was guilty of any trick or artifice which prevented the plaintiff or any of the creditors at interest from discovering the misapplication of the funds by the receiver at an earlier date. For aught that appears the most casual attention to business, or inquiry by the creditors, would at any time have revealed the exact status of the receiver's accounts. Even if constructive notice to the bank of the conversion of the funds by the receiver and the terms of the order of court, and the failure of the bank to report to the court or the other creditors at interest the fact of the payment of the unauthorized checks to the receiver, would amount to actual fraud, such fraud, unattended by any trick or artifice upon the part of the bank calculated to prevent inquiry and discovery of the fraud by the creditors at interest, would not operate to suspend the running of the statute of limitations. Under such conditions the case of *Sutton* v. *Dye,* 60 *Ga.* 449, would be applicable and controlling. The bailment in that case involved all the features of a trust, and the court in rendering its decision, said: "Fraud, which must have been discovered if usual and reasonable diligence had been exercised, is not a good reply to the statute of limitations. Where, in 1867, a factor sold cotton for his principal, received the proceeds, and, on payment being demanded, answered falsely and fraudulently that he had paid the money over to a third person, but was not then or thereafter called upon to show a receipt, or exhibit his books, or furnish any evidence of the payment except his bare word, and used no trick or artifice to support his statement or stifle inquiry, an action brought for the money, in 1877, by the principal against the factor, was barred; and the declaration, though setting forth the fraud, and averring its non-discovery until within two years prior to the institution of the suit, was properly dismissed on demurrer."