30314. NATIONAL SURETY CORPORATION *et al.*
*v.* WRIGHT.

DECIDED MARCH 2, 1944. REHEARING DENIED MARCH 24, 1944.

*J. B. Moore, Conyers, Gowen & Conyers,* for plaintiffs in error.
*Reese, Scarlett, Bennet & Gilbert,* contra:

PARKER, J. 1. It will be noted from the above facts that this petition was brought against the National Surety Corporation, hereinafter called surety, in Glynn County, Georgia, and alleged that it was a foreign corporation with an office and place of business in Glynn County, and that service was perfected on the other two defendants. who resided in counties other than Glynn. There were several grounds of the general demurrer. We think that one only is deserving of consideration, that is, whether the surety is liable at all, under the allegations of the petition. If the surety

is not liable, then it necessarily follows that the suit fails as to the other defendants, since they are not residents of Glynn County. See *Boalenreiter* v. *Williams,* 58 *Ga. App.* 635 (199 S. E. 558). It becomes necessary to inquire into the statutes governing the liability of the surety. This will involve a construction of our law as set forth in three Code sections. § 23-1705 requires bond of or for all public contractors. § 23-1708 provides for actions on such bonds. § 23-1709 reads as follows: "No action can be instituted on said bond after one year from the completion of the said contract and the acceptance of said public building or public work by the proper public authorities." The petition alleged that the plaintiff began work on the highway project in October, 1940, and continued the work until December, 1940, when Saunders and Perkins notified him to quit work because they "did not have any money to pay him." On August 19, 1941, the contract between the highway department and Saunders and Perkins was canceled. This was before the project was completed. Saunders and Perkins did not inform the plaintiff of such cancellation, and the plaintiff did not learn of it until December, 1942. Immediately upon learning that the contract had been canceled the plaintiff on December 19, 1942, filed his suit.

It is not contended in the argument here that the petition alleged facts sufficient to arrest the running of the statute of limitations, under the principle set forth in *American National Bank of Macon* v. *Fidelity and Deposit Co.,* 131 *Ga.* 854 (*a*) (63 S. E. 622, 21 L. R. A. (N. S.) 962), where it was said: "Where a right of action exists because of wrongful conduct which does not involve actual fraud, in order to prevent the statute of limitations from running by reason of the fraud of the party committing it, consisting in the concealment of such conduct, there must be something more than a mere failure, with fraudulent intent, to disclose such conduct, unless there is on the party committing such wrong a duty to make a disclosure thereof by reason of facts and circumstances, or the existence between the parties of a confidential relation." Since there is no such contention, we will not further discuss it, but will consider the allegations of the petition as to the contract having been "canceled," rather than completed and the project accepted as provided in the Code, § 23-1709. If no action can be brought after the expiration of one year from the date of the can-

cellation of a contract, which is the specified time in which an action can be brought under the statute from the completion of the contract and the acceptance of the work by the proper authorities, then the court erred in overruling the demurrer, otherwise not. It will be observed that the statute makes no mention of a cancellation of a contract, but fixes the one-year limitation from the "completion" of the contract and "acceptance" of the project. It is our opinion that the statute should be strictly construed, and not be extended to apply a limitation to a canceled contract. When we read the surety contract in the light of the Code sections above referred to, we conclude that it was not the intention of the legislature that the one-year limitation should embrace canceled contracts. On this subject, we find the following statement in 17 C. J. S., 739, § 319: "The words of a contract will be given a reasonable construction, where that is possible, rather than an unreasonable one, and the court will likewise endeavor to give a construction most equitable to the parties, and one which will not give one of them an unfair or unreasonable advantage over the other. So that interpretation which evolves the more reasonable and probable contract should be adopted, and a construction leading to an absurd result should be avoided;" and in an editorial note (page 740): "Construction consistent with right and justice is favored where two interpretations are possible. . . Construction placing one party at mercy of other should be avoided;" and, on page 742, § 320: "Forfeitures by implication or construction are not favored; and a construction entailing a forfeiture will not be given a contract unless no other construction is reasonably possible; where the contract is susceptible of two constructions, one of which will work a forfeiture and the other will not, that construction should be adopted which will prevent the forfeiture and preserve the rights of the parties, provided such construction is within the bounds of reason and fairness." The court did not err in overruling the general demurrer for any of the reasons assigned.

2. The contract sued on is in the form of a letter from Saunders and Perkins, addressed to J. D. Wright. The letter concludes with the statement that "if the above rental agreement meets with your approval, your signature below will be a good and binding agreement." The signature of J. D. Wright, the addressee, and that of C. A. Wheldon, appear at the bottom of the letter. One

special demurrer to the petition is grounded on the contention that the contract appears to be a joint one, and that C. A. Wheldon was not made a party. The petition alleges that the defendants are indebted to the plaintiff on the contract sued on. Whether that is true or not does not appear on the face of the petition. The answer to that question depends on what the evidence shows. The return of the letter to Saunders and Perkins with two signatures was a counter-proposal by Wright and Wheldon, as well as an acceptance by Wright, depending on what action was taken by Saunders and Perkins. They could have accepted the counter-proposal by the two men, in which event the contract would have been a joint one, and in which event C. A. Wheldon would have been a necessary party to an action on the joint contract. If the counter-proposal was not accepted, and if Saunders and Perkins refused to deal with Wheldon, and dealt solely with Wright in carrying out the contract, the action could proceed as brought. The petition does not show on its face that Wheldon was a necessary party, and this demurrer was properly overruled. It was not error to overrule the general and special demurrers.

*Judgment affirmed. Sutton, P. J., and Felton, J., concur.*