46343. STATE OF GEORGIA v. SNYDER BROTHERS COMPANY.

ARGUED JUNE 28, 1971— DECIDED OCTOBER 27, 1971— REHEARING DENIED NOVEMBER 22, 1971.

*Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Richard L. Chambers, Louis F. McDonald, Assistant Attorneys General,* for appellant.

*McClure, Ramsay & Struble, George B. Ramsay, Jr.,* for appellee.

PANNELL, Judge. The State Revenue Commissioner disallowed certain interest deductions of the taxpayer, Snyder Brothers Company, on its income tax returns for several years and issued an execution for the deficiency in income tax payments created thereby. To the executions the taxpayer filed its affidavit of illegality alleging that the interest deducted and which the Revenue Commissioner disallowed was interest paid upon an indebtedness evidenced by certain debentures of the taxpayer and was therefore deductible under *Code* § 92-3109. The taxpayer then made a motion for summary judgment attaching thereto an affidavit of its secretary which showed that from April 1, 1947, until November 30, 1957, Franklin D. Snyder and Floyd R. Snyder, who are brothers, carried on the business of manufacturing industrial furniture finishes as a partnership under the name Snyder Brothers Company, in which each was an equal partner; that on November 30, 1957, Franklin D. Snyder and Floyd R. Snyder transferred substantially all of the assets of such partnership to a new Georgia corporation which they had organized under the name Snyder Brothers Company; that in exchange for the assets of such partnership transferred to the company, the company assumed liabilities of such partnership in the amount of $202,568.13, and issued capital stock of the company having a par value of $100,000, plus 6% subordinated debentures in the principal amount of $140,000; that the book value of the assets transferred to the company was $450,382.87, which was $7,814.74 more than the sum of such assumed liabilities, capital stock and debentures, and this excess was shown on the books of the company as

"paid-in surplus"; that as equal partners in the transferring partnership, Franklin D. Snyder and Floyd R. Snyder each received one-half of such capital stock and debentures of the company; that upon the original issuance of such debentures, Franklin D. Snyder made gifts of all the debentures to which he was entitled to his minor children by having them issued to George B. Ramsay, Jr., as custodian for such children under the laws of Georgia. Floyd R. Snyder also made gifts of debentures in the principal amount of $15,000 to his minor children upon original issuance by having them issued to George B. Ramsay, Jr., as custodian for such children, and thereafter Floyd R. Snyder made gifts of additional debentures in the principal amount of $45,000 to his minor children by transferring them to such custodian; that interest has been paid on all of the outstanding debentures in each year as it became due; that the debentures have at all times been treated as indebtedness on the books of the company, and all payments of interest have been shown as such. Attached to the affidavit was a facsimile of the debentures which reads as follows: "6% Subordinated Debenture, Snyder Brothers Company, Toccoa, Georgia, due December 1, 1977. For value received, the undersigned Snyder Brothers Company, a Georgia Corporation, and herein referred to as 'The Company' hereby promises to pay to the registered holder hereof, on December 1, 1977, at the principal office of the Company in Toccoa, Georgia, the principal sum of _____ with interest from date at six per cent per annum, payable semi-annually on June 1 and December 1 in each year. This debenture is transferable only on the books of the Company by proper written assignment duly executed by the registered holder hereof and the presentation of this debenture at the office of Company in Toccoa, Georgia, for notation of such transfer hereon and on the books of the Company. The Company may deem and treat the registered holder of this debenture as the absolute owner thereof for all purposes. The Company may make payment of interest hereon by mailing check to the registered holder at the address shown

on the books of the Company, provided such check is duly paid upon due presentation thereof to the bank on which drawn. The Company may refuse to make any requested transfer until furnished with evidence satisfactory to it that the transfer has been duly executed by the registered holder hereof and that such registered holder is duly authorized to make such requested transfer. The Company shall have the privilege of redeeming this note at any time prior to maturity at the office of the Company in Toccoa, Georgia, by giving 30 days notice in writing by mail addressed to the person in whose name this note is registered and by paying the principal amount thereof plus accrued interest. This note is one of a series of Subordinated Debentures (hereinafter referred to as 'Notes') aggregating $140,000 in principal amount, issued or about to be issued by the Company, All of which will become due on December 1, 1977. All the Notes of this series are payable pari passu, and the holders shall have no preference over each other. Anything in this note to the contrary notwithstanding, the indebtedness evidenced by this note and all notes of this series shall be subordinate and junior in right of payment, to the extent and in the manner hereinafter set forth, to all indebtedness of the Company whether outstanding at the date of this note or incurred and not subordinated after the date of this note, (such indebtedness of the Company to which the notes are subordinate and junior being sometimes hereinafter referred to as 'superior indebtedness'): (a) In the event of any insolvency or bankruptcy proceedings, or any receivership, liquidation, reorganization or other similar proceedings in connection therewith, relative to the Company or to its creditors, as such or to its property, and in the event of any proceedings for voluntary liquidation, dissolution or other winding up of the Company, whether or not involving insolvency or bankruptcy, then the holders of the superior indebtedness shall be entitled to receive payment in full of all principal and interest on all superior indebetedness before the holders of the notes are entitled to receive any payment on account of principal or interest

upon the notes, and to that end the holders of the superior indebtedness shall be entitled to receive for application in payment thereof any payment or distribution of any kind or character, whether in cash or property or securities, which may be payable or deliverable in any such proceedings in respect of the notes; and (b) In event the principal or any interest payment on these notes becomes in default, then the holders of the superior indebtedness outstanding at the time of such default shall be entitled to receive payment in full of principal and interest on all superior indebtedness before the holders of the notes are entitled to receive any payment on account of the principal or interest upon the notes. No present or future holder of superior indebtedness shall be prejudiced in his right to enforce subordination of the notes by any act or failure to act on the part of the Company. The provisions of the preceding paragraph and its two sub-paragraphs are solely for the purpose of defining the relative rights of the holders of superior indebtedness on the one hand, and the holders of the notes on the other hand, and nothing herein shall impair, as between the Company and the [h]older of any note, the obligation of the Company, which is unconditional and absolute, to pay to the holder hereof the principal and interest thereon in accordance with its terms, nor shall anything herein prevent the holder of a note from exercising all remedies otherwise permitted by applicable law or hereunder upon default, subject to the rights, if any, under the proceeding [sic] paragraph and its two subparagraphs of holders of superior indebtedness to receive cash, property or securities otherwise payable or deliverable to the holders of the notes. The Company agrees, for the benefit of the holders of superior indebtedness, that in the event the principal or any interest payment on this note becomes in default; (a) the Company will give prompt notice in writing of such happening to the holders of superior indebtedness, and (b) all superior indebtedness shall forthwith become immediately due and payable upon demand, regardless of the expressed maturity thereof." The State Revenue Commissioner also

made a motion for summary judgment presenting certain correspondence between the taxpayer and its attorney in reference to the debentures which shows the attorney's approval of the issuance of the debentures although an officer of the taxpayer's bank had some differences of opinion thereon.

The Commissioner relies primarily upon a case decided adversely to the taxpayer, as to a deduction of interest from federal income taxes, decided by the Fifth Circuit Court of Appeals in United States v. Snyder Brothers Co., 367 F2d 980, certiorari denied, 386 U. S. 956 (87 SC 1021, 18 LE2d 104). This was a three-judge case, two judges concurring and one judge dissenting. The majority concluded that the creation of a debt under the circumstances disclosed was not objectionable, nor was the subordination of a debt objectionable, but that the two together were fatal to the taxpayer. As to this the dissenting judge said (p. 989): "The majority seems to admit that the creation of a debt between the debenture holders and the corporation in the circumstances here present would not be objectionable. Likewise, it is admitted that subordination is not fatal to the taxpayer's position. But the majority will not tolerate both. I cannot agree. Such reasoning will allow a debt but never subordination. Subordination is not condemned but is an approved business practice. The taxpayer usually gets in trouble when the facts show a 'thin incorporation' where the ratio of capital to debt financing reflects a gross imbalance; where there is an absence of business purpose in the transaction; or when the value of the property transferred to create the debt is less than the amount of the debt created. The facts and circumstances of this case clearly show an absence of any of these condemned practices. There is not present any capital and debt imbalance; There is a valid business purpose; and no one has questioned the value of the assets transferred." We agree with the dissenting judge that the reason for the majority ruling in that case is not in accord with the decisions of this court relating to similar documents and situations. See *Dept. of Revenue v.*

*King Bros. Motor Co.,* 70 Ga. App. 741 (29 SE2d 529); *Lowe v. Findley,* 141 Ga. 380, 383 (81 SE 230); *Equitable Bldg. &c. Assn. v. Brady,* 171 Ga. 576 (156 SE 222); *O'Neal v. Automobile Piston & Parts Co.,* 188 Ga. 380, 385 (4 SE2d 40, 123 ALR 850). See also John Kelley Co. v. Commissioner, 326 U. S. 521 (66 SC 299, 90 LE 278); Commissioner v. O. P. P. Holding Corp., 76 F2d 11 (2d Cir. 1935); Kraft Foods Co. v. Commissioner, 232 F2d 118 (2d Cir. 1956).

However, we cannot agree that no issues of material fact existed either as to the State Revenue Commissioner or as to the taxpayer, for the reason that we cannot accept as true value the book value of the assets. Until the true value of these assets is determined this court cannot decide as a matter of law that there is a proper ratio to debt financing or whether it reflects a gross imbalance or whether the value of the property transferred to create the debt is less than the amount of the debt created. The burden to prove true value rested respectively upon the movant in each motion for summary judgment. *Bagley v. Firestone Tire &c. Co.,* 104 Ga. App. 736, 739 (123 SE2d 179); *Cotton States Mut. Ins. Co. v. Martin,* 110 Ga. App. 309 (138 SE2d 433); *Georgia Mut. Ins. Co. v. Morgan,* 115 Ga. App. 520 (154 SE2d 720); *Southern Bell Tel. &c. Co. v. Beaver,* 120 Ga. App. 420 (3, 4) (170 SE2d 737); *Brown v. Sheffield,* 121 Ga. App. 383 (3b) (173 SE2d 891). Neither of the parties having carried such burden, the respective motions should have been denied. We accordingly hold that the judge erred in granting the taxpayer's motion for summary judgment, but did not err in denying the summary judgment of the Revenue Commissioner.

*Judgment affirmed in part; reversed in part. Bell, C. J., and Deen, J., concur.*