## 50171. SAM FINLEY, INC. v. INTERSTATE FIRE INSURANCE COMPANY et al.

PANNELL, Presiding Judge.

A subcontractor, on June 19, 1973, brought an action against a contractor seeking recovery of the amount owed the complainant by the contractor arising out of the performance by the complainant of the subcontract with the contractor, and subsequently on October 29, 1973, filed a motion to make the surety on a labor and material payment bond (on which the contractor was the principal) a party to the action. The motion was granted and an amendment was filed on November 14, 1973, naming the surety as a defendant in Count 2 of the complaint as amended seeking recovery of the debt owed by the contractor to the subcontractor complainant, and service upon the surety was had within a reasonable time.

The surety filed a motion for summary judgment contending the amendment did not relate back to the time of filing the original complaint and that the one year limitation for bringing an action upon the bond had expired prior to filing the amendment. The plaintiff also made a motion for summary judgment based upon the admission of the debt by the contractor and contending that the amendment did relate back to the filing of the original complaint so as to prevent the application of the one year limitation provided for in the bond. On the hearing it appeared that the general contractor had completed the work "on or after June 21, 1972" or on or

before "August 22, 1972," which disclosed that the original complaint had been filed within the one year limitation period. The trial judge overruled the complainant's motion for summary judgment and granted the surety's motion for summary judgment. The complainant appealed. *Held:*

1. Where a labor and material payment bond is given to the owner in which the general contractor is principal, and an insurance company is surety, which bond provides that no suit or action shall be commenced thereunder by any claimant after the expiration of one year following the date on which the principal ceased work on such contract, such limitation upon the bringing of an action by a beneficiary of the contract is not void on the grounds of public policy. See, *Walton v. American Mut. Fire Ins. Co.,* 109 Ga. App. 348, 349 (136 SE2d 168) and citations therein contained. See also, *Aiken v. Northwestern Mut. Ins. Co.,* 106 Ga. App. 220 (126 SE2d 630); *General Ins. Co. of America v. Lee Chocolate Co.,* 97 Ga. App. 588 (103 SE2d 632); *McGarry v. Seiz,* 129 Ga. 296 (58 SE 856).

2. Section 15 (c) of the Civil Practice Act (Ga. L. 1966, pp. 609, 627, as amended by Section 6 of the Act of 1972, pp. 689, 694; Code Ann. § 81A-115(c)) reads as follows: "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. *An amendment changing the party against whom a claim is asserted relates back to the date of the original pleadings if the foregoing provisions are satisfied, and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.*" The italicized language was added by the Act of 1972, adding to Subsection (c) the same language added to an identical subsection (c) of Rule 12 of the Federal Rules of Civil Practice, which was amended in

1966. The purpose of the amendment was to clarify and make more certain the meaning of the first sentence and to eliminate too strict a construction of the meaning of the first sentence. An examination of the construction of the Federal Rules and the 1966 Amendment thereof may shed light on the proper construction of our statutory rules, similarly amended. We quote excerpts and comments from Volume 3 of Moore's Federal Practice. "The general rule is that 15 (c) will not apply to an amendment which substitutes or adds a new party or parties for those brought before the court by the original pleadings—whether plaintiff or defendant. The reasoning is that such an alteration amounts to the assertion of a new cause of action and if an amendment were allowed to relate back in that situation the purpose of the statute of limitations would be defeated.

*"An exception to the above rule developed, however, in favor of relation back, both as to plaintiff and defendant, when the new and old parties have such an identity of interest that it can be assumed, or proved, that relation back is not prejudicial.* As with misnomer and change of capacity, the rationale is that the statute of limitations should not be used mechanically to prevent adjudication of a claim where the real parties in interest were sufficiently alerted to the proceedings or were involved in them unofficially from an early state. As Judge Hickey said, in Travelers Indemnity Co. v. United States ex rel. Construction Specialties Co., [382 F2d 103, 106] 'nor is the purpose of the Federal Rules furthered by denying the addition of a party who has a close identity of interest with the old party when the added party will not be prejudiced. The ends of justice are not served when forfeiture of just claims because of technical rules is allowed.'

"In addition to demonstrating this absence of prejudice, to qualify under the exception to the general rule, the plaintiff had to show that his failure to join the correct parties at the outset had not been due to his own inexcusable neglect. . .

"Thus although sound doctrine had been developed before 1966 to allow amendments changing parties to relate back, many courts either failed to recognize this flexibility in the Rule or applied it too restrictively. These

discrepancies arose because, while 15 (c) does not by its terms grant the court discretion to refuse to allow an amended pleading to relate back, the motion for leave to amend is normally made under subdivision (a), which does provide for such discretion.

"Under Rule 15 (c) as it stood before July 1966, just results could be reached and were being reached by a great many courts. As pointed out, however, subdivision (c) was being misapplied in a number of cases. In 1964 the Advisory Committee proposed a curative amendment, which was adopted in 1966, to make it clear that amendments which change the parties to an action can relate back to the date of filing in certain situations. Although the Rule refers to 'an amendment changing the party' it has properly been held to sanction relation back of amendments which add or drop parties, as well as those substituting new parties for those earlier joined.

"The first sentence added by the 1966 amendment adopts and restates criteria which had been used frequently before the Rule was amended, to determine whether an amendment changing a party should relate back. In addition to the general requirement that the amendment must arise 'out of the conduct, transaction, or occurrence set forth . . . in the original pleading,' the Rule demands a showing that, within the period of limitations, the new party 'has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits' and that he 'knew or should have known that, but for a mistake concerning the identity of the proper party,' he would have been brought into the proceedings earlier.

"This provision characterizes the relationship which must exist between the action and the party to be joined, to justify denying the protection of the statute of limitations. The first requirement guarantees that the new party has received notice of the proceeding which, although informal, was sufficient to satisfy the limitations policy. The second condition, which embraces the estoppel test as well as cases of misnomer, further defines the type of unofficial notice which can serve as an effective alternative to formal action within the period of limitations. The identity-of-interest concept, although

not explicitly mentioned in the revised Rule, remains a useful test for measuring possible prejudice; similarly, plaintiff's own inexcusable neglect continues to be a proper consideration in the exercise of discretion under Rule 15 (a), and thus applicable to Rule 15 (c) determinations." Moore's Federal Practice, Vol. 3, Par. 15.15 [4.-12], pp. 1041-1046, 1048-1050.

"Statutes of limitations are designed to ensure that parties are given formal and seasonable notice that a claim is being asserted against them. Rule 15 (c) is based on the idea that a party who is notified of litigation concerning a given transaction or occurrence is entitled to no more protection from statutes of limitations than one who is informed of the precise legal description of the rights sought to be enforced. If the original pleading gives fair notice of the general fact situation out of which the claim arises, the defendant will not be deprived of any protection which the state statute of limitations was designed to afford him. Being able to take advantage of plaintiff's pleading mistakes is not one of these protections.

"Similar considerations apply even when an amendment has the effect of joining a new party defendant to the proceedings, since such joinder will not be subject to relation back unless there is a sufficient identity of interest between the new and old parties so as to ensure that the new party has had adequate notice, and the resulting protection which the statute of limitations was designed to provide." Moore's Federal Practice, Vol. 3, Par. 15.15 [2], pp. 1021-1023.

"As noted above, Rule 15 (c) is based on the concept that a party who is notified of litigation concerning a given transaction or occurrence has been given all the notice that statutes of limitation are intended to afford. Thus, if the original pleading gives fair notice of the general fact situation out of which the claim or defense arises, an amendment which merely makes more specific what has already been alleged, such as by specifying particular acts of negligence under a general allegation of negligence, or remedies a defective pleading, will relate back even though the statute of limitations has run in the interim. Similarly, while it is still the rule that an

amendment which states an entirely new claim for relief based on different facts will not relate back, if the pleading sufficiently indicates the transaction or occurrence on which the claim or defense is based, amendments correcting specific factual details, such as time and place, as well as other items, will relate back.

"The Federal Rules have broadened the meaning of the concept of 'cause of action,' shifting the emphasis from a theory of law as to the cause of action, to the specified conduct of the defendant upon which the plaintiff relies to enforce his claim. And an amendment, which changes only the legal theory of the action, or adds another claim arising out of the same transaction or occurrence, will relate back. Thus, an amendment will relate back which changes the theory of recovery as to the type of negligence claimed, or adds additional grounds of negligence, changes the theory of the action from one based on contract to one sounding in tort [compare *Murray Chevrolet Co., Inc. v. Godwin,* 129 Ga. App. 153 (199 SE2d 117)] changes a demand for equitable relief to one for legal relief, states a different fulfillment of conditions precedent, or increases the amount of damages claimed. . .

"A narrow interpretation of Rule 15 (c) is illustrated by L. E. Whitham Construction Co. v. Remer [105 F2d 371]. The original complaint contained a cause of action for wrongful death. Subsequently, the plaintiff amended to state two additional 'causes of action,' one for damages suffered on account of expenses incurred during the last illness and for the funeral of the decedent, and the other based on pain and suffering of the decedent prior to his death. The court of appeals held that the amendment would not relate back since, under state law, the two added claims were separate 'causes of action.' This decision seems improper, since the additional claims clearly arose out of the 'transaction or occurrence' set forth in the original complaint, i.e., the death of the decedent; the defendant had full notice that plaintiff was asserting a claim based on the death and only a conceptualistic notion of cause of action would prevent relation back. The decision has been generally criticized, and generally repudiated by other cases.

"Also rejected are various mechanical rules which

sometimes have been used in applying Rule 15 (c), such as whether evidence on the new claim could have been offered under the original pleadings, whether a judgment on the old or the new claim would bar the other, and whether the same defense could be offered against both claims. Such rules are properly rejected, since they largely reflect attempts to limit relation back to the same 'cause of action,' when the Rule has abandoned that concept in favor of the 'same transaction or occurrence' test." Moore's Federal Practice, Vol. 3, Par. 15.15 [3], pp. 1025-1032.

It is apparent that the strict rule of no relation back of the amendment to the time of filing the original complaint because the assertion of a new cause of action is no longer applicable unless the causes of the action are not only different but arise out of wholly different facts. The claim asserted in the original complaint and the claim asserted in the amendment to that complaint arose out of the failure of the contractor to pay the subcontractor, and in both recovery of this debt is sought, although in the original complaint the cause of action is based on the contract between the subcontractor and contractor and in the amended complaint the cause of action strictly speaking is asserted on the surety bond executed by the contractor and the surety. Though these may be, strictly speaking, different causes of action they are not causes of action arising out of wholly different facts, but arising out of the identical facts. We accordingly, hold that the amended claim met the requirement of this portion of Section 15 (c) of the Civil Practice Act.

3. (a) However, upon the hearing the plaintiff offered no evidence showing the requirements of the second sentence of Section 15 (c) were complied with. There being no evidence showing the surety had notice or knowledge of the institution of the original complaint, the burden being upon the plaintiff on its motion for summary judgment to produce such proof and it having failed to do so, the trial judge did not err in overruling plaintiff's motion for summary judgment.

(b) While the surety presented some evidence by one official, that the official had not been notified and that the files of the surety in the official's possession did not

contain any notice of the original complaint, the official admitted that other offices of the surety, including its home office in Chattanooga could have received such notices and that he did not know whether they had received such notices or not. Accordingly, the surety not having produced evidence demanding a finding it did not receive such notices failed to carry the burden cast upon it as to its motion for summary judgment. The trial court, therefore, erred in granting summary judgment to the defendant security. See, *State of Ga. v. Snyder Bros. Co.,* 125 Ga. App. 91, 97 (186 SE2d 474).

*Judgment affirmed in part and reversed in part. Quillian and Marshall, JJ., concur.*

ARGUED FEBRUARY 4, 1975 — DECIDED JUNE 5, 1975.

*Webb, Parker, Young & Ferguson, Harold T. Daniel, Jr., Barry F. Shea, Bertram S. Boley,* for appellant.

*Weltner, Kidd, Crumbley & Tate, R. Alex Crumbley, Powell, Goldstein, Frazer & Murphy, James H. Keaten, Daniel M. Coursey, Jr., Frank Mays Hull,* for appellees.