71804. UNITED STATES FIDELITY & GUARANTY COMPANY
v. ROME CONCRETE PIPE COMPANY, INC.
(348 SE2d 83)

BENHAM, Judge.
Appellee Rome Concrete Pipe Company, Inc., supplied construction materials to a general contractor working on seven projects let by the Department of Transportation (DOT). Appellant United States Fidelity & Guaranty Company (USF&G) was the surety named in the payment and performance bonds given pursuant to OCGA § 36-82-101. Alleging that the general contractor had filed a petition in bankruptcy without paying for the materials supplied, appellee filed suit against appellant on June 29, 1984. Appellant sought summary judgment based upon the one-year statute of limitation contained in OCGA § 36-82-105 and, when the trial court denied the motion, sought interlocutory review of the decision in this court. We granted appellant's application and affirm the trial court's ruling.
OCGA § 36-82-105, the statute of limitation at issue, is stated in the conjunctive: no action on payment or performance bonds required by OCGA § 36-82-101 may be instituted "after one year from the completion of the contract *and* the acceptance of the . . . public work by the proper public authorities." (Emphasis supplied.) It is undisputed that the work on the seven projects at issue was accepted by the DOT over a year before the present lawsuit was filed. The focus, then, is on when the contracts were completed. Appellant contends a contract is completed and the statute of limitation begins to run upon acceptance of the work by the proper public authority. However, equating completion of the contract with acceptance of the work negates the conjunctive nature of the statute, rendering one element meaningless. A statute should be construed in a manner that will not render its language meaningless or mere surplusage. *State of Ga. v.*

*C. S. B.*, 250 Ga. 261 (297 SE2d 260) (1982); *Lovett Sports v. Atlantic Exhibit Svcs.*, 178 Ga. App. 278, 280 (342 SE2d 726) (1986).

The record in this case does not lend itself to summary adjudication. By means of an affidavit, the assistant office engineer of the Contracts Administration Department of the DOT stated that DOT contracts are not completed until a two-stage process is accomplished: the project must be accepted by the DOT Construction Department *and* the Contracts Administration Department must audit and check the contract items and requests for payment. Completion of the latter stage is evidenced by the execution of a "Final Statement Check Sheet" and a "Standard Final Release" for each project. The completed final documentation for two of the seven projects at issue was attached as exhibits to the engineer's affidavit, and they show July 5, 1983, as the date "checking completed and statement passed." The affiant averred that the completing documentation on the remaining five projects had not been executed as of the date of his affidavit, December 26, 1984. Since July 5, 1983, was the date two of the seven contracts were completed, appellee's lawsuit, filed on June 29, 1984, was filed within the one-year statute of limitation.

Appellant cites *American Surety Co. v. Ed Smith & Sons*, 100 Ga. App. 658 (112 SE2d 211) (1959), as dispositive of the issue. In *American Surety*, the plaintiff alleged in its complaint that the work had been accepted and the contract completed more than one year prior to the filing of the action, but insisted that the contract was not complete, for purposes of the statute of limitation, until final payment was made. In a succinct opinion, this court disagreed. In a concurring opinion, Judge Townsend noted that the statute "does not itself state whether the words 'completion of the contract' refer to completion by the contractor, or completion by both the contractor and the State or political subdivision." Id. at 660. The same statute of limitation is at issue in the case at bar, but, unlike the *American Surety* court, we have before us the benefit of evidence as to when a contract is complete. Since the DOT, a party to the contracts, determines the contract complete after its Contracts Administration Department executes a "Final Statement Check Sheet" and a "Standard Final Release" and since suit was filed before one year from the date of the execution of those documents had elapsed, the statute of limitation had not expired, and the trial court did not err in denying summary judgment to appellant.

In a supplemental brief, appellant brings to this court's attention a recent decision of the United States Court of Appeals for the Eleventh Circuit, construing OCGA § 36-82-105. In *Augusta Iron &c. Works v. U. S. Fidelity & Guaranty Co.* (Case No. 85-8899, decided June 2, 1986), the federal appellate court held that a suit filed more than one year after work was completed and accepted by DOT was

barred by the statute of limitation. In so doing, the court implicitly equated completion of the work with completion of the contract. As our discussion above reveals, the case before us contains evidence that completion of the work is not tantamount to completion of the contract. Thus, the federal decision, neither binding on this court nor factually indistinguishable from the case at bar, does not give us pause.

*Judgment affirmed. Banke, C. J., McMurray, P. J., Birdsong, P. J., Sognier and Pope, JJ., concur. Deen, P. J., Carley and Beasley, JJ., dissent.*

DEEN, Presiding Judge, dissenting.

My reading of the record and of relevant law compels me to dissent from the majority opinion, for the ensuing reasons. OCGA § 36-82-105 expressly limits claims on public payment bonds to those filed within one year of the "completion of the contract and the acceptance of the public . . . work by the proper authorities." Both parties admit that the work in question was accepted by DOT more than one year before Rome Concrete's suit was filed. The issue on appeal involves the interpretation of the statutory language; that is, does completion of the contract occur when the contractor's work is finished or when the governmental agency's files are closed?

It has long been held in Georgia that the limiting language of this statute must be strictly construed. See *National Surety Corp. v. Wright,* 70 Ga. App. 838 (29 SE2d 662) (1944). In *American Surety Co. v. Ed Smith & Sons,* 100 Ga. App. 658 (112 SE2d 211) (1959), work on a highway project was accepted July 29, 1955; final payment was made November 26, 1957; and the subcontractor's suit was filed November 4, 1958. This court held that the action was barred by the statute of limitations and observed, at 659, that "no action could be instituted on a bond after one year from the completion of the contract and the acceptance of the work involved in the contract. This court declines to extend a Code section so as to make the meaning other than the unequivocal language thereof. . . . To our minds there is only one construction of [this Code section], and that is to construe it as written. The language is plain and unequivocal." Accord *Standard Oil Co. of N. J. v. Jasper County,* 53 Ga. App. 804 (187 SE 307) (1936).

*Completion* of the work by the contractor must occur before the DOT is in a position to consider *accepting* it;[1] the order of the words in the statute reflects this necessity, and there is evidence of record that, in practical terms, this is how DOT operates. Georgia cases have

---

[1] "Completion" may mean either *total* completion or *substantial* completion, with only punch-list type items remaining to be done.

consistently been decided on the assumption that the statute of limitations begins to run on the date when the work is accepted by the appropriate authority, such acceptance necessarily being preceded by total or substantial completion of the work contracted for, regardless of when final payment is actually made and regardless of that authority's internal practice regarding the technical closing of its files.

In *National Surety Corp. v. Wright*, 70 Ga. App. 838 (29 SE2d 662) (1944), the issue was whether the statute applied when a contract was cancelled before the work contracted for was completed. This court alluded, at 840, to the fact that the cancellation occurred "before the project was completed" and went on to cite the statute as "mak[ing] no mention of a cancellation" and "fix[ing] the one-year limitation from the 'completion' and 'acceptance' of the project." This holding would make no sense if the definition of "completed" urged by appellee were the one intended by the statute.

In *Sam Finley, Inc. v. Interstate Fire Ins. Co.*, 135 Ga. App. 14 (217 SE2d 358) (1975), the primary issue was whether an amendment to the complaint related back to the time of the original, thereby necessitating a determination of whether the action against the party named in the amendment was barred by the statute of limitation. The limitations issue was framed by this court, in pertinent part, in these words: "[N]o suit or action shall be commenced . . . by any claimant after the expiration of one year following the *date on which the principal* [i.e., the contractor] *ceased work* on such contract." (Emphasis supplied.) In *Finley* we are told, at 14, that "the general contractor had completed the work . . . [between] June 21, 1972 . . . [and] . . . Aug. 22, 1972." The complaint was filed June 19, 1973, and the amendment was filed November 14, 1973. In holding that in the peculiar circumstances of the case the amendment did relate back, the court ruled that the suit was filed within the statutory period — that is, within one year of the date when the contractor finished his work on the contract. See 119 ALR 255 et seq. for similar holdings in other jurisdictions.

As we have pointed out, supra, the record *sub judice* shows that DOT accepted the contractor's work as of June 3, 1983, one year and twenty-six days before appellee filed suit. The record also contains the affidavit of the administrative assistant in DOT's Contracts Administration office to the effect that *completion* of the work precedes its *acceptance* by the department and that on its internal records DOT designates as "Open" certain contracts (including those where bankruptcy is involved, as in the instant case) *after* the work has been completed and it has been finally accepted by DOT.

I find no reason, or authority, for departing from this reasonable and well-settled interpretation of OCGA § 36-82-105. I respectfully dissent.

I am authorized to state that Judge Carley joins in this dissent.

BEASLEY, Judge, dissenting.

Total completion of the work may not in fact occur before acceptance. There may be substantial completion, then acceptance, and then final completion of punch-list type items later. I believe that is what the legislature had in mind when it put both conditions into the statute. If "completion" in the sense used in the statute always preceded acceptance, i.e., meant "total" completion, then the condition of "completion of the work" would be of no effect and mere surplusage. But the legislature deliberately required the happening of these two events before the statute would begin to run in favor of the surety. It mattered not which occurred first so long as they both occurred. Normally, of course, one would expect total completion before acceptance; at least there would ordinarily be substantial completion before acceptance, and that may be why the legislature put the two conditions in the order in which they appear. It would seem rather backwards to say "upon the acceptance . . . by the proper public authorities and upon completion of the contract."

The majority requires in effect a third condition, the audit and closing of the file by the public authority, or final payment. This condition grows out of the majority's interpretation of the "completion of the contract" condition as meaning the full satisfaction of the contract by *both* parties to it. But if the legislature had intended to include a third condition, such as final payment or the closing of the file, it would have said so. Such a condition, however, is not hidden in the "completion of the contract" portion of the triggering events. Moreover, such an additional condition would render "acceptance" unnecessary and meaningless because the third condition of final payment or audit and closing of the file by the public authority would always occur after acceptance. So the majority's rationale falls on the very principle it cites, that statutory construction should not render any of the language meaningless or mere surplusage.

Moreover, introducing the third condition means that the surety can be held at risk for an indeterminate period of time over which it and its obligor have no control. The time consumed for internal audits and procedures of the public authority obligee, for whom the work was done, before it closed the file *after* "acceptance," would seem to frustrate the purpose of the statute.

The patent purpose of the statute is to limit the time during which the surety could be held liable for the obligor contractor's performance of the work or payment of its subcontractors and suppliers. The surety is not concerned with final performance of the contract obligations of the public authority/obligee, or with final payment by it to the contractor/obligor. Those conditions do not affect the surety's

liability.

In the instant case it is a question of nonpayment of a supplier. The internal procedures of the obligee who has accepted the job would not affect the contractor's or the surety's obligation to that supplier on the payment bond. It is irrelevant to this consideration. The statute limits the time when such a supplier can hold the surety liable, and there is no contingency created by the pendency of the audit or holdback of final payment which would prevent the supplier from proceeding against the surety within one year from the time the contractor completes the work and the public authority accepts it.

This would not be untrue in a suit on the performance bond by the public authority either. Although its internal audit and final payment might relate to its determination of whether to sue on the performance bond, the legislature gave it one year from the date of its "acceptance" (and of course completion) of the work to do so. If it could ignore the fact of "acceptance" and wait until the end of its audit and/or final payment before the one-year tolling period commenced before bringing suit, it could delay at its option the period during which the surety remained at risk. That would obviously abort the purpose of the statute as well as delete the efficacy of the statutory condition of "acceptance." Although it could accomplish a delay by not "accepting" the job until final payment or closing of file, once it accepts (and assuming "completion") it has one year to file suit on the performance bond.

Furthermore, the majority's construction is inharmonious. "Acceptance" expressly relates to action taken solely by the obligee, the public authority. "Completion of the contract," then, should be taken to relate solely to action required by the obligor, the "performance" of the contract. This I would see as the implied understanding of the court in its description of the statute in *National Surety Corp. v. Wright*, 70 Ga. App. 838, 841 (29 SE2d 662) (1944).

DECIDED JULY 2, 1986 —
REHEARING DENIED JULY 28, 1986 — 

*J. Alexander Porter, Sidney R. Barrett, Jr.*, for appellant.
*S. David Smith, Jr., Frank W. Scoggins*, for appellee.