989 So.2d 682 (2008)
Badewatte MARAJ and Sabindranath Maraj, Appellants,
v.
NORTH BROWARD HOSPITAL DISTRICT, Appellee.
No. 4D07-1917.
District Court of Appeal of Florida, Fourth District.
July 30, 2008.
Rehearing Denied September 15, 2008.
*683 Richard F. Hussey of Richard F. Hussey, P.A., Fort Lauderdale, for appellants.
Janine Kalagher McGuire of Conrad & Scherer, LLP, Fort Lauderdale, for appellee.
TAYLOR, J.
Plaintiffs, Badewatte Maraj and Sabindranath Maraj, appeal the final summary judgment entered for North Broward Medical District (NBMD) in this medical malpractice action. The trial court concluded that the statute of limitations, section 95.11(4)(b), Florida Statutes (2007), had run with respect to the vicarious liability claim against NBMD. For reasons stated below, we reverse the summary final judgment.
This action stems from a visit by Sabindranath Maraj to the emergency room at North Broward Medical Center, owned and operated by NBMD, on September 12, 2001. Mrs. Maraj, then nine months pregnant and overdue, complained of abdominal pains to Dr. Richard J. Paley, the emergency room physician on duty. Because North Broward had no obstetrical unit, Dr. Paley consulted with the obstetrician on call, Dr. Bliss. Dr. Bliss ordered a biophysical ultrasound, which is used to determine the health of the fetus. When interpreting the ultrasound, a doctor considers the movement of the limbs, breathing, gross body movement, and the level of amniotic fluid. The doctor creates a biophysical profile, awarding a maximum of two points in each category.
In this case, radiologist Edward James, M.D. interpreted Mrs. Maraj's ultrasound and awarded six out of eight points. However, Dr. James did not specify that the two missing points were due to a complete lack of amniotic fluid. Upon receiving Dr. James's biophysical profile, Dr. Lawrence Katt discharged Mrs. Maraj.
Five days later, on September 17, 2001, Mrs. Maraj went to the emergency room at Broward General Medical Center with the same complaints: abdominal pain and overdue birth. Dr. Hood performed an ultrasound and determined that the fetus had died. The Marajs' stillborn baby was delivered by ceasarian section.
Mrs. Maraj remained at Broward General for four days, during which time Dr. Hood obtained her medical records from North Broward Medical Center. The records noted that Dr. James issued the biophysical profile after interpreting Mrs. Maraj's ultrasound. During their depositions, the Marajs stated that Dr. Hood informed them that the records reflected a complete lack of amniotic fluid. Dr. Hood also told them that when the doctors at North Broward Medical Center performed the ultrasound, they should have known there was no amniotic fluid in the sac. He further attributed the lack of amniotic fluid from September 12 through September 16 to the baby's death.
On November 18, 2003,[1] assuming that the statute of limitations began to run on September 17, 2001, the Marajs filed a notice of intent to initiate an action for medical malpractice under Florida Rule of Civil Procedure 1.650(b) against Dr. Paley, Dr. Katt, and NBMD. In their complaint filed April 8, 2004, the Marajs sued Dr. Paley and Dr. Katt for medical negligence *684 under counts I and II respectively. Under count III, the complaint alleged that NBMD was "vicariously liable for the negligent acts and omissions of" doctors Paley and Katt. The Marajs did not mention Dr. James in the original or amended complaint.
Due to the Marajs' failure to comply with requirements contained in chapter 766, Florida Statutes (2003), Dr. Paley and Dr. Katt each filed a motion to dismiss. Section 766.203(2) requires a medical malpractice claimant to corroborate the assertion that reasonable grounds exist to file the claim with "a verified written medical expert opinion from a medical expert as defined in s. 766.202(6), at the time the notice of intent to initiate litigation is mailed." Section 766.202(6) requires an expert to meet the requirements contained in section 766.102. Because Drs. Paley and Katt are emergency room doctors, the expert must "have had substantial professional experience within the preceding 5 years while assigned to provide emergency medical services in a hospital emergency department." § 766.102(9)(a), Fla. Stat.
The trial court denied both motions to dismiss; however, we reversed that decision in Paley v. Maraj, 910 So.2d 282 (Fla. 4th DCA 2005). We held that the affiant on which the Marajs relied did not constitute a medical expert under § 766.102(9)(a), Fla. Stat., because the affiant was not an emergency room physician. Id. at 283. Subsequently, pursuant to a joint stipulation, the trial court entered a final order of dismissal with prejudice as to Dr. Paley and Dr. Katt. The trial court also granted NBMD's motion to dismiss the vicarious liability claim as to both doctors, but granted plaintiffs leave to file a second amended complaint.
In the second amended complaint, the Marajs named for the first time as a defendant Dr. James, the radiologist who had interpreted the ultrasound at North Broward Medical Center and faxed the report to Drs. Paley and Katt during Mrs. Maraj's visit. According to the Marajs, they did not learn of Dr. James's involvement until "informed of the statements of Dr. Katt and Dr. Paley which took place on February 27, 2004 and March 16, 2004" respectively. In their second amended complaint, the Marajs also amended their claim against NBMD to allege vicarious liability as to Dr. James.
NBMD filed a motion for summary final judgment.[2] NBMD argued that, because the statute of limitations had run as to plaintiffs' claim against Dr. James, the Marajs could not maintain a claim against the hospital district for the vicarious liability of Dr. James. The Marajs countered that the statute of limitations began to run as to Dr. James on February 27, 2004, when they learned of his involvement. Thus, their December 13, 2005 notice of intent was timely filed within the two-year limitations period imposed by § 95.11(4)(b), Fla. Stat. Ultimately, the trial court entered summary final judgment in favor of NBMD. The Marajs appealed.
A summary judgment "shall be rendered forthwith if ... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Florida Rule of Civil Procedure 1.510(c). On appeal, the "standard of review of summary judgment orders is de novo." Weinstein Design Group, Inc. v. Fielder, 884 So.2d 990, 997 (Fla. 4th DCA 2004). We "must examine the record and any supporting affidavits in the light most favorable to the non-moving party." Id. *685 (quoting City of Lauderhill v. Rhames, 864 So.2d 432, 434 n. 1 (Fla. 4th DCA 2003)).
The Marajs contend that the trial court erred in granting summary final judgment for NBMD. They assert that their suit against NBMD was timely filed, and that it is immaterial whether the statute of limitations ran as to Dr. James.[3] They argue; simply because the claim against Dr. James is time-barred, they are not precluded from amending their initial complaint to include a vicarious liability claim against NBMD based on Dr. James's negligence. To support this position, the Marajs rely on Vah v. Garner Emergency Physicians, P.A., 490 So.2d 967 (Fla. 5th DCA 1986).
In Vah, the plaintiff filed a complaint against a hospital for vicarious liability as to an emergency room doctor, Dr. Eisenberg. When the plaintiff filed suit, the statute of limitations had not yet expired as to Dr. Eisenberg; however, Vah chose not to sue the doctor individually. While the action was pending, the statute of limitations period ended, at which point the hospital moved for summary judgment. The Fifth District reversed the trial court's entry of summary judgment for the hospital, holding that the running of the statute of limitations for the malpractice action against the doctor did not bar the plaintiff's action against the doctor's employer, the hospital. The court reasoned that, because the plaintiff had the option of suing either the doctor, the hospital derivatively, or both, and because he brought his action against the hospital within the statutory time frame for the doctor's liability, the suit against the hospital was not barred.
The facts in this case are similar in that here, as in Vah, the plaintiffs sued the hospital before the statute had run. However, Vah is somewhat distinguishable because the vicarious liability claim based on Dr. Eisenberg's negligence was filed against the hospital before the statute had run. Here, the plaintiffs did not bring their vicarious liability action against the hospital as to Dr. James until after the expiration of the two-year period set forth in section 95.11(4)(b), Florida Statutes (2007). NBMD argues that the difference between the facts in Vah and the present facts warrants a different outcome, namely, that the Marajs added the vicarious liability claim, based on Dr. James's actions, in violation of the statute of limitations. Thus, the trial court correctly granted final summary judgment in its favor.
We agree with plaintiffs that their vicarious liability claim as to Dr. James, added to their second amended complaint, relates back to their initial and amended complaint and thus is not defeated by the statute of limitations. Florida Rule of Civil Procedure 1.190(c) provides that an "amendment ... relate[s] back to the date of the original pleading" whenever the claim contained in the amendment arises out of the "conduct, transaction, or occurrence" attempted to be set forth in the initial complaint. "An amendment which merely makes more specific what has already been alleged generally, or which changes the legal theory of the action, will relate back even though the statute of limitations has run in the interim." Lefebvre v. James, 697 So.2d 918, 920 (Fla. 4th DCA 1997) (quoting Kiehl v. Brown, 546 So.2d 18, 19 (Fla. 3d DCA 1989)). Of course, "a party cannot defeat the statute of limitations by filing a whole new cause of action and labeling it an amended complaint." Id.
Contrary to the hospital district's contention, the plaintiffs in this case did not *686 file an entirely new and independent cause of action. Instead, their amended claim arose out of the same occurrence as the claims included in the original complaint: medical treatment provided Mrs. Maraj during her visit to the hospital regarding abdominal pains and the status of her pregnancy. The amended complaint does not raise additional issues but merely includes additional information, namely, that Dr. James "interpreted a fetal profile ultra sound evaluation on the fetus of [Mrs. Maraj] and faxed his interpretation to Dr. Paley and/or Dr. Katt." See Cinque v. Ungaro, Weber & Brezing, 622 So.2d 1051 (Fla. 4th DCA 1993) (holding, in a wrongful death suit against a medical partnership, that where a medical partnership was named as a defendant in the original complaint while the amended pleading, filed after expiration of the statute of limitations, changed only the name of the partnership's allegedly negligent employee, the amendment related back to the original filing).
Like the plaintiffs in Cinque, the Marajs merely changed the name of the tortfeasor on whose negligence the vicarious liability claim against the hospital was based. Additionally, as plaintiffs point out, the original statutory notice of intent to initiate litigation for medical malpractice served on NBMD described the claim as being against the hospital "and any other healthcare provider to be determined through discovery."
Accordingly, we reverse the trial court's order granting summary final judgment for the North Broward Hospital District.
FARMER and STEVENSON, JJ., concur.
NOTES
[1] The notice of intent was timely filed because on August 27, 2003, the plaintiffs secured an automatic 90-day extension of the statute of limitations pursuant to § 766.104(2), Fla. Stat.
[2] Dr. James filed a motion to dismiss, arguing that the notice of intent was not filed within the period imposed under section 95.11(4)(b), Fla. Stat. The lower court has not yet ruled on this motion and it is not at issue on appeal.
[3] Plaintiffs served the notice of intent to file suit on Dr. James on December 13, 2005, well outside the two-year statute of limitations period.