**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**January 18, 2017**

# In the Court of Appeals of Georgia

A16A2167. THOMAS v. TENET HEALTHSYSTEM GB, INC. ME-094 d/b/a ATLANTA MEDICAL CENTER.

MERCIER, Judge.

Lorrine Thomas appeals the trial court's dismissal of one count of her amended complaint. She argues that the trial court erred in dismissing Count 10 of Thomas's second amended complaint because the allegations related back to the date of the original filing, and were not time barred. We agree and reverse.

In May 2012, Thomas was involved in a car accident. At the scene of the accident Thomas was placed on a backboard by paramedics, and taken by ambulance to Atlanta Medical Center (AMC). Dr. Robin Lowman was Thomas's physician when she arrived at AMC's emergency room, and he ordered that a cervical CT scan and other tests be performed on Thomas. When completed, the CT scan was sent to Dr.

Clifford Grossman who read it at his home. After reviewing the CT scan, Dr. Grossman concluded that there were no fractures in Thomas's cervical spine, and communicated this to Dr. Lowman. Dr. Lowman instructed a nurse to remove a cervical spine collar that had been placed on Thomas, and to discharge her from the hospital. The collar was then removed from Thomas's neck.

Thomas, who was heavily medicated at the time, was placed in a wheelchair and taken to the curb to await her ride, but when her brother arrived to pick her up, Thomas was slumped over and unresponsive in the wheelchair. Thomas was readmitted to the hospital and upon re-examination it was discovered that Thomas did in fact have a fracture in her cervical spine. When the cervical spine collar was removed, the fracture in Thomas's spine was displaced, which caused a compression of Thomas's spinal cord, and neurological damage. As a result of the neurological damage, Thomas was rendered a quadriplegic.

In May 2014, Thomas filed a complaint alleging professional negligence against Dr. Lowman and Dr. Grossman, as well as against AMC for imputed liability. In August 2015, Thomas filed a second amended complaint alleging three additional counts of simple negligence against AMC. AMC filed a motion to dismiss the three new counts, arguing that they were time-barred. Thomas filed her reply in opposition

in October 2015. In April 2016, the trial court issued an order dismissing one of the three new counts against AMC, finding that the allegations did not relate back to the time the original complaint was filed. In May 2016, Thomas filed an application for interlocutory appeal, which we granted, and this appeal followed.

In her sole enumeration of error, Thomas contends that the trial court erred in granting AMC's motion to dismiss Count 10 of her second amended complaint because the allegations contained therein related back to the date of the original filing pursuant to OCGA § 9-11-15 (c). See Generally OCGA § 9-3-33. "A motion to dismiss may be granted only where a complaint shows with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proven in support of his or her claim. We review the trial court's ruling on a motion to dismiss under the de novo standard of review." *Walker County v. Tri-State Crematory*, 292 Ga. App. 411 (664 SE2d 788) (2008) (citations omitted).

Viewed in such a light, the evidence shows that on May 6, 2014, Thomas filed her original complaint alleging professional negligence against Drs. Lowman and Grossman, as well as against AMC for imputed liability for the negligence of its physicians on staff. During the course of discovery, Thomas learned that AMC had a policy entitled "Termination of Cervical Spine Immobilization," which required that

a physician remove the cervical spine collar, that Dr. Lowman instructed a nurse to remove the collar, and that the nurses had been trained on the policy. Based on this information, Thomas amended her complaint on August 19, 2015, to add three claims against the hospital: negligent credentialing (Count 8), negligent failure to train (Count 9), and simple negligence (Count 10). Specifically, Thomas alleged that the nurse who violated hospital policy caused or contributed to Thomas's injuries and that AMC was liable for the nurse's simple negligence. AMC argued that the new causes of action were barred by the statute of limitations. The trial court agreed in part, dismissing Count 10, and finding that the original complaint was "devoid of allegations of liability on the part of the AMC nursing staff. Therefore, . . . the claim for imputed simple negligence . . . does not arise from 'the same conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading'. OCGA § 9-11-15 (c)." However, the trial court denied the motion to dismiss as to the negligent credentialing (Count 8) and negligent training (Count 9) claims.

OCGA § 9-11-15 (c) states that "[w]henever the claim or defense asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Additionally, we are to construe OCGA § 9-11-15

4

liberally in favor of allowing amendments. See *Deering v. Keever*, 282 Ga. 161, 163 (646 SE2d 262) (2007). With respect to whether an amendment to a complaint relates back to the original filing we have held that:

> the question of relation back of the amendment turns on fair notice of the same general fact situation from which the claim arises. It is apparent that the strict rule of no relation back of the amendment to the time of filing the original complaint because of the assertion of a new cause of action is no longer applicable unless the causes of the action are not only different but arise out of wholly different facts.

*Jensen v. Engler*, 317 Ga. 879, 883 (1) (b) (733 SE2d 52) (2012) (citation, emphasis, and punctuation omitted).

In *Jensen*, in which the plaintiff initially asserted an ordinary negligence claim and then amended the claim after the statute of limitation expired to add a professional negligence claim, we concluded that the trial court properly denied the motion to dismiss the claim. Id. at 884 (1). In that case, the plaintiff found evidence during discovery suggesting that the physician defendant had deviated from the standard of care during the patient's emergency room visit, and we found that the claim was not time barred. Id. at 884 (1), n. 6. Similarly, here, Thomas discovered the violation of the hospital policy during discovery. In Thomas's original complaint, she alleged that

5

"the C-collar was removed by Defendant Atlanta Medical personnel." Thus, AMC had fair notice of the same general fact situation from which the simple negligence claim arose. S4391ee *Jensen*, supra. Consequently, the argument that the removal of the collar arose out of the conduct, transaction, or occurrence set forth in the original complaint appears to be correct.

In its order granting the motion to dismiss, the trial court relied on *Thomas v. Medical Center of Central Georgia*, 286 Ga. App. 147 (648 SE2d 409) (2007) to support its ruling. There, the plaintiff filed a professional malpractice claim against a physician and a hospital based on vicarious liability, then amended the complaint to add professional negligence claims based on the conduct of the nursing staff. Id. We did not analyze the case under OCGA § 9-11-15, ruling instead that allowing "a plaintiff to switch or add professionals upon which she bases her claims would certainly frustrate the intent of OCGA § 9-11-9.1." Id. at 149. There, we concluded that the plaintiff was not allowed to commence a new professional malpractice action based on the conduct of different professionals outside the statute of limitation. Id. Thomas's argument is that the instant case is more akin to *Jensen* than to *Thomas*, while AMC argues that *Thomas* is controlling.

6

However, because in *Thomas* we analyzed the amendment to the original complaint under OCGA § 9-11-9.1, its holding is inapplicable in the present case inasmuch as the new claims do not allege professional negligence. Thus, we must analyze the claims asserted in Count 10 under OCGA § 9-11-15 and determine whether it arises out of the same conduct, transaction, or occurrence set forth the original complaint. See OCGA § 9-11-15 (c), supra.

In her original complaint, Thomas set out allegations that were based upon the conduct of AMC and others that related to her visit to the emergency room, her treatment there, and her discharge. Moreover, Thomas made allegations in her original complaint that the cervical spine collar was removed by an employee of AMC. Here both the original and amended complaints set out allegations about the improper removal of the cervical spine collar by an employee of AMC. Specifically, Thomas's amended complaint alleges that the nurse who violated hospital policy by removing the collar, and this caused or contributed to Thomas's injuries and that AMC was liable for the nurse's simple negligence in that regard. Thus, the claims in Count 10 of the amended complaint arise out of the same conduct, transaction, or occurrence set forth in the original complaint. See *Jensen*, supra at 884; OCGA § 9-11-15 (c). AMC's argument that the removal of the collar constituted different conduct unrelated to the

7

claims alleged in the original complaint not only fails, but also appears to ignore our directive to construe OCGA § 9-11-15 liberally. Therefore, for the foregoing reasons, the trial court's order dismissing Count 10 of Thomas's second amended complaint is reversed.

*Judgment reversed. Ellington, P. J., and Branch, J., concur.*