**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**January 19, 2017**

# In the Court of Appeals of Georgia

A16A2160. THOMAS v. TENET HEALTHSYSTEM GB, INC. d/b/a ATLANTA MEDICAL CENTER.

MERCIER, Judge.

Lorrine Thomas appeals the trial court's partial grant of summary judgment to Atlanta Medical Center (AMC). She argues that the trial court erred when it found that two physicians were independent contractors, and when it concluded that AMC was not a joint venturer with its co-defendants. We affirm in part and vacate in part, and the case is remanded.

In May 2012, Thomas was involved in a car accident. At the scene of the accident, Thomas was placed on a backboard by paramedics, and taken by ambulance to AMC. Dr. Robin Lowman was Thomas's physician when she arrived at AMC's emergency room, and he ordered that a cervical CT scan and other tests be performed

on Thomas. When completed, the CT scan was sent to Dr. Clifford Grossman who read it at his home. After reviewing the CT scan, Dr. Grossman concluded that there were no fractures in Thomas's cervical spine, and communicated this to Dr. Lowman. Dr. Lowman instructed a nurse at AMC to remove a cervical spine collar that had been placed on Thomas, and to discharge her from the hospital. The nurse then removed the collar from Thomas's neck.

Thomas, who was heavily medicated at the time, was placed in a wheelchair and taken to the curb to await her ride, but when her brother arrived to pick her up, Thomas was slumped over and unresponsive in the wheelchair. Thomas was readmitted to the hospital, and upon re-examination, it was discovered that Thomas did in fact have a fracture in her cervical spine. When the cervical spine collar was removed, the fracture in Thomas's spine was displaced, which caused a compression of Thomas's spinal cord and neurological damage. As a result of the neurological damage, Thomas was rendered a quadriplegic.

In May 2014, Thomas filed a complaint alleging professional negligence against Dr. Lowman and Dr. Grossman, as well as against AMC for imputed liability. Thomas alleged inter alia, that both Dr. Lowman and Dr. Grossman were employees or agents

2

of AMC, and that both doctors and their practice groups were joint venturers with AMC.

In November 2014, AMC filed a motion for summary judgment, and Thomas filed a response in August 2015. The trial court entered an order granting AMC's motion for summary judgment in part in April 2016. This appeal followed.

1. In her first enumeration of error, Thomas argues that the trial court erred when it granted summary judgment to AMC, based on its finding that Dr. Grossman and Dr. Lowman were independent contractors. "It is well established that on appeal of a grant of summary judgment, the appellate court must determine whether the trial court erred in concluding that no genuine issue of material fact remains and that the party was entitled to judgment as a matter of law. This requires a de novo review of the evidence." *Rubin v. Cello Corp.*, 235 Ga. App. 250 (510 SE2d 541) (1998) (citations omitted). Furthermore, "[s]ummary judgment is appropriate when the court, viewing all the facts and evidence and reasonable inferences from those facts in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case." *Zeller v. Home Fed. Sav. & Loan Ass'n of Atlanta*, 220 Ga. App. 843 (471 SE2d 1) (1996) (citation omitted).

In addition to the traditional analysis conducted by this court on the appeal of a grant of summary judgment, this case also implicates a specific statutory scheme. OCGA § 51-2-5.1 (f) states:

> [w]hether a health care professional is an actual agent, an employee, or an independent contractor shall be determined by the language of the contract between the health care professional and the hospital. In the absence of such a contract, or if the contract is unclear or ambiguous, a health care professional shall only be considered the hospital's employee or actual agent if it can be shown by a preponderance of the evidence that the hospital reserves the right to control the time, manner, or method in which the health care professional performs the services for which licensed, as distinguished from the right to merely require certain definite results.

"Health care professional" is pertinently defined by the statute as "a professional licensed as a . . . medical doctor." OCGA § 51-2-5.1 (a) (1). It is not disputed that both Dr. Lowman and Dr. Grossman are medical doctors. Thus, we must first determine whether a contract existed between either Dr. Lowman or Dr. Grossman, and AMC.

Dr. Grossman had a contract with his physician group, Diagnostic Imaging Services, Inc. (DIS), pursuant to which he provided radiology services at AMC. That

4

contract bound Dr. Grossman by all terms of the contract between DIS and AMC, and was in effect during the time Thomas was a patient of AMC. Dr. Lowman had a contract with her physician group, ACS Primary Care Physicians, P.C. (ACS). Similar to Dr. Grossman, this contract required Dr. Lowman to be bound by terms of the contract between ACS and AMC, and was in effect while Thomas was a patient at AMC.

In determining that both doctors were independent contractors, the trial court relied on language in both contracts that stated "Independent Contractors. In performing the services herein specified, Group and Providers [or Physicians, per the contract between AMC and DIS] are acting as independent contractors, and shall not be considered employees or agents of Hospital." The trial court found that because this language in the contracts (between the physician groups and AMC) was clear and unambiguous, both doctors were independent contractors, and so AMC could not be held vicariously liable for their actions. While the language of these contracts is assuredly clear and unambiguous, the contracts fail to meet the standard for determining whether an agency relationship existed between the physicians and the hospital, as established by OCGA § 51-2-5.1 (f).

5

In analyzing the meaning of a statute, we as an appellate court must "presume that the General Assembly meant what it said and said what it meant." *In the Interest of L.T.*, 325 Ga. App. 590, 591 (754 SE2d 380) (2014). See also *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a), (751 SE2d 337) (2013) citing *Arby's Restaurant Group, Inc. v. McRae*, 292 Ga. 243, 245 (1) (734 SE2d 55) (2012). Where the language of a statute is plain and susceptible to only one natural and reasonable construction appellate courts must construe the statute accordingly. *Deal*, supra at 172-173 (1) (a).

OCGA § 51-2-5.1 (f) states clearly that "[w]hether a health care professional is an actual agent, an employee, or an independent contractor shall be determined by the language of the contract *between the health care professional and the hospital*." (Emphasis supplied). "Health care professional" is defined as a professional who possesses a license from an enumerated list of professions. OCGA § 51-2-5.1 (a) (1). OCGA § 51-2-5.1 (f) makes no mention of physician groups or contracts that exist between physician groups and physicians, but only mentions those that are between health care professionals and hospitals. Accordingly, because Dr. Grossman and Dr. Lowman had contracts with their physician groups who in turn had contracts with AMC, these contractual relationships do not fall under OCGA § 51-2-5.1 (f). Thus,

it was error for the trial court to grant summary judgment to AMC based on the contractual language between AMC and both DIS and ACS.

However, this does not mean that AMC is not entitled to summary judgment. OCGA § 51-2-5.1 (g) states: "[i]f the court finds that there is no contract or that the contract is unclear or ambiguous as to the relationship between the hospital and health care professional, the court shall apply the following." OCGA § 51-2-5.1 (1) - (2) then lists a variety of factors that a court may and shall not consider when determining whether an agency relationship exists. Because the lower court determined there was no agency relationship based on the contractual language quoted above, it did not conduct such an analysis. Therefore, we vacate the trial court's finding that no agency relationship existed between AMC and Dr. Grossman and/or Dr. Lowman, and remand the case so that the trial court may make a proper analysis pursuant to OCGA § 51-2-5.1. (g).

2. In her second enumeration of error, Thomas contends that the trial court erred when it found that no joint venture existed between AMC and its co-defendants.

> A joint venture arises where two or more parties combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control. There must be not only a joint interest in the objects and purposes of the undertaking, but also a right, express or implied of each

7

member of the joint venture to direct and control the conduct of the other. Thus, it is the right of mutual control, rather than its actual exercise, which must be shown.

*Kelleher v. Pain Care of Georgia, Inc.*, 246 Ga. App. 619, 620 (540 SE2d 705) (2000) (punctuation and footnotes omitted).

Thomas argues that because the contracts between AMC and both DIS and ACS contained provisions calling for mutual operation, they were joint venturers. Under the contract between AMC and DIS, the DIS physicians were to cooperate with the AMC employee health plan, and perform duties requested by the hospital. DIS and AMC were to agree on the number of physicians in the radiology department, and the schedule of those physicians. The contract between ACS and AMC contained similar provisions. However, while these contracts show some interdependency between the parties, these provisions fail to establish that the parties to the contracts had the right of mutual control. Stated succinctly "there is simply no evidence that [AMC] had a right of mutual control of the manner in which [DIS or ACS] provided [medical] services." *Kitchens v. Brusman*, 280 Ga. App. 163, 167 (3) (633 SE2d 585) (2006). Accordingly, it was not error for the trial court to grant summary judgment to AMC on this issue.

Thomas also argues that because AMC did not move for summary judgment regarding its relationship with the individual physicians, it was error for the trial court to find that no joint venture existed. "Although a trial court may, sua sponte, grant summary judgment on an issue not raised by the parties, in so doing the trial court must ensure that the party against whom summary judgment is rendered is given full and fair notice and opportunity to respond prior to entry of summary judgment." *McClendon v. 1152 Spring Street Associates-Georgia, Ltd. III*, 225 Ga. App. 333, 334 (484 SE2d 40) (1997) (punctuation and citation omitted). The record does not reflect that any steps were taken by the trial court to give Thomas proper notice and an opportunity to respond to the entry of summary judgment on the issue of whether AMC had a right to control the manner in which Dr. Grossman and Dr. Lowman provided medical services. See *McClendon*, supra. Accordingly, the trial court's grant of summary judgment to AMC on this issue is vacated.

*Judgment vacated in part, affirmed in part, and case remanded. Ellington, P. J., and Branch, J., concur.*