304 Ga. 86
FINAL COPY

S17G1021. TENET HEALTHSYSTEM GB, INC. v. THOMAS.

HINES, Chief Justice.

This Court granted a writ of certiorari to the Court of Appeals in *Thomas v. Tenet HealthSystem GB*, 340 Ga. App. 70 (796 SE2d 301) (2017), to consider whether that court properly held that a claim of imputed simple negligence against a hospital, which was asserted in a second amended complaint, related back to the original complaint pursuant to OCGA § 9-11-15 (c).[1]  Finding that the Court of Appeals was correct, we affirm that court's judgment.

---

[1] OCGA § 9-11-15 (c) provides:
> Whenever the claim or defense asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.  An amendment changing the party against whom a claim is asserted relates back to the date of the original pleadings if the foregoing provisions are satisfied, and if within the period provided by law for commencing the action against him the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

The original complaint was filed on May 6, 2014, shortly before expiration of the applicable two-year statute of limitation, OCGA § 9-3-33, and the facts alleged in that initial filing include the following. Lorrine Thomas was involved in a motor vehicle accident. Emergency personnel secured her neck with a cervical collar, or "C-collar," placed her on a backboard, and transported her to the emergency room operated by Tenet HealthSystem GB, Inc. d/b/a Atlanta Medical Center ("hospital"). Still immobilized with the C-collar, Thomas presented to the emergency room at approximately 8:44 p.m. on May 10, 2012, was triaged by the hospital nursing staff, was examined by at least two hospital nurses, and was medically screened by Dr. Robin Lowman, who ordered a cervical CT scan. Dr. Clifford Grossman interpreted the CT scan, found no evidence of any acute fracture or subluxation of Thomas's cervical spine, and reported his findings to Dr. Lowman. After further examination of Thomas, Dr. Lowman discharged her, and "[t]he C-collar was removed by [hospital] personnel." Thomas was placed in a wheelchair and escorted out of the hospital at approximately 12:19 a.m. on May 11, 2012, to wait for her ride home. While waiting, however, she became unresponsive, was rushed back into the emergency room, and admitted to the hospital. After a cervical spine MRI

2

later in the day, it was discovered that Thomas did have a cervical spine fracture that became dislocated and resulted in compression of the spinal cord, neurological damage, and quadriplegia. Nursing personnel were immediately notified to place a C-collar back on Thomas.

After setting out these facts, the original complaint asserted claims for professional negligence against Dr. Grossman and Dr. Lowman and alleged that, as a proximate result, "the injury to Ms. Thomas's cervical spine progressed to subluxation and spinal cord injury resulting in her becoming a quadriplegic." The original complaint then asserted a claim against the hospital of imputed liability for the negligent acts and omissions of those two doctors pursuant to the doctrines of respondeat superior, joint venture, and ostensible and apparent agency. Attached as exhibits to and referenced in the original complaint are the affidavits of two experts.[2] Dr. Anthony Scarcella's affidavit includes his opinion that if Dr. Lowman interpreted the cervical CT scan herself, then she breached the standard of care by, among other things, failing to stabilize, protect, and treat or cause to be treated Thomas's dangerously unstable cervical

---

[2] In reviewing a trial court's ruling on a motion to dismiss, an appellate court may consider any exhibits attached to and incorporated into the complaint. See *Thomas v. Gregory*, 332 Ga. App. 286, 287 (772 SE2d 382) (2015).

3

spine prior to discharging her from the hospital. The two expert affidavits concluded that the acts and omissions of the doctors contributed to Thomas being discharged from the emergency room with a dangerously unstable spine. Dr. Joel Meyer's affidavit concluded that due to gross negligence on the part of Dr. Grossman, "the injury to Ms. Lorrine Thomas's cervical spine progressed to subluxation and spinal cord injury after the cervical collar was removed at discharge resulting in her becoming a quadriplegic."

In August 2015, Thomas filed a second amended complaint that added three counts of negligence against the hospital. One of those counts asserted a claim against the hospital of imputed liability, pursuant to the doctrine of respondeat superior or agency, for the simple negligence of a nursing employee who removed Thomas's cervical spine collar in violation of a hospital policy that only a physician could remove a patient's cervical spine collar. On the hospital's motion, the trial court dismissed that count, finding that the original complaint was "devoid of allegations of liability on the part of the hospital nursing staff," that the new imputed liability claim does not arise from the same "conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," OCGA § 9-11-15 (c), and that the new claim therefore does

4

not relate back to the filing of the original complaint. On interlocutory appeal, the Court of Appeals reversed, determining that, as the original complaint included the allegation that the cervical spine collar was removed by a hospital employee, as well as other allegations based on the conduct of the hospital and others related to Thomas's emergency room visit, treatment, and discharge, her new imputed liability claim against the hospital for a nurse's removal of the collar in violation of hospital policy arose out of the same conduct, transaction, or occurrence set forth in the original complaint. *Thomas*, 340 Ga. App. at 73-74.[3]

The language of OCGA § 9-11-15 (c) is modeled after Federal Rule of Civil Procedure 15 (c), "and although there are some differences between the state and federal provisions, those differences are not material to the question presented here. We may, therefore, look for guidance in decisions of the federal

---

[3] From the same trial court order that is the subject of this case, Thomas filed a separate appeal to the Court of Appeals regarding the trial court's grant of summary judgment to the hospital on certain issues. The Court of Appeals affirmed in part, vacated in part, and remanded the case to the trial court. *Thomas v. Tenet HealthSystem GB*, 340 Ga. App. 78 (796 SE2d 307) (2017). We denied the hospital's petition for certiorari.

courts interpreting and applying" Rule 15 (c).[4] *Community & Southern Bank v. Lovell*, 302 Ga. 375, 377 (2), n. 6 (807 SE2d 444) (2017). See also *Sam Finley, Inc. v. Interstate Fire Ins. Co.*, 135 Ga. App. 14, 16 (2) (217 SE2d 358) (1975). It follows that we may also look to decisions from the courts of other states that interpret and apply their own rules that are modeled after Federal Rule 15 (c). With this in mind, we turn first to the standard of review. In its opinion, the Court of Appeals, after stating that "'[a] motion to dismiss may be granted only where a complaint shows with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proven in support of his or her claim,'" said that its review of the ruling on the motion to dismiss in this case would be reviewed under the "de novo" standard. *Thomas*, 340 Ga. App. at 71 (citation omitted). We agree. Although the standard of review for "decisions under the same transaction or occurrence test of Federal Rule 15 (c) (1) (B) has sometimes been said to be abuse of discretion," the better position is that

---

[4] Federal Rule 15 (c) (1) (B) provides that "[a]n amendment . . . relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading[.]"

6

decisions under the rule do not involve an exercise of discretion. 3 Edward

Sherman et al., Moore's Federal Practice — Civil § 15.19 [2] (2018).

> Instead, the court asks whether the facts provable under the amended complaint arose out of the conduct alleged in the original complaint. The abuse of discretion standard is suitable for decisions that balance several factors, often including equitable considerations. The relation-back issue, on the other hand, is more analogous to a dismissal on the pleadings. If facts provable under the amended complaint arose out of the conduct alleged in the original complaint, relation back is mandatory. Therefore, the proper standard of review is de novo.

Id. See also *Slayton v. American Express Co.*, 460 F3d 215, 226-228 (2nd Cir.

2006). Accordingly, the decision of the trial court is owed no deference on

appeal. See *Johnson v. Burrell*, 294 Ga. 301, 301 (2), n. 2 (751 SE2d 301)

(2013).

Generally, our Civil Practice Act (CPA), OCGA § 9-11-1 et seq.,

"advances 'liberality of pleading.'" *Deering v. Keever*, 282 Ga. 161, 163 (646

SE2d 262) (2007) (citation omitted). Under OCGA § 9-11-8 (a) (2), an original

complaint, or any other pleading that sets forth a claim for relief, shall contain

"[a] short and plain statement of the claims showing that the pleader is entitled

to relief; and . . . [a] demand for judgment for the relief to which the pleader

deems himself entitled . . . ." Under this provision, "a complaint need only

provide 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Mayle v. Felix*, 545 U. S. 644, 655 (125 SCt 2562, 162 LE2d 582) (2005) (citation omitted) (construing similar Federal Rule 8 (a)). Such notice pleading "is the hallmark of and prescribed by the CPA," *Phagan v. State*, 287 Ga. 856, 859 (700 SE2d 589) (2010), which "abolished issue pleading." *Cotton, Inc. v. Phil-Dan Trucking*, 270 Ga. 95, 95 (2) (507 SE2d 730) (1998). The particular section of the CPA at issue in this case, OCGA § 9-11-15, "is liberally construed in favor of allowing amendments. Under OCGA § 9-11-15, an amendment to a complaint may raise a new cause of action." *Deering*, 282 Ga. at 163 (citations omitted). And under OCGA § 9-11-15 (c), the specific subsection that is relevant here, "[w]henever the claim or defense asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Cf. Federal Rule of Civil Procedure 15 (c) (1) (B) (formerly Rule 15 (c) (2)) ("An amendment . . . relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading[.]"). "The very purpose of [OCGA § 9-11-15

8

(c)] is to 'qualify a statute of limitations.'" *Mayle*, 545 U. S. at 662 (citation omitted). The relation back rule

> is based on the notion that once litigation involving particular conduct or a given transaction or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of defenses or claims that arise out of the same conduct, transaction, or occurrence as set forth in the original pleading.

6A Wright & Miller, Federal Practice & Procedure Civil § 1496 (3d ed., April 2018 Update). See also *Mayle*, 545 U. S. at 666 (Souter, J., dissenting).

In OCGA § 9-11-15 (c), like Federal Rule 15 (c) (1) (B), "[t]he key words are 'conduct, transaction, or occurrence.'" *Mayle*, 545 U. S. at 656. The best "formulation[ ] for describing the parameters of the relation-back doctrine and focusing on its underlying policies" is the standard found in the rule itself, i.e., "whether the amended pleading alleges matter that arises out of the same conduct, transaction, or occurrence as that set forth in the original pleading." 6A Wright & Miller, supra at § 1497. See also *Grange Mut. Cas. Co. v. Woodard*, 300 Ga. 848, 852 (2) (A) (797 SE2d 814) (2017) (in construing a provision of the CPA, like other statutes, we must afford the statutory text its plain and ordinary meaning, view it in context, and read it in its most natural and

reasonable way).  The Supreme Court of the United States has approved a "formulation" that is closely based on the plain language of the rule: "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims."  *Mayle*, 545 U. S. at 659.  See also 6A Wright & Miller, supra at § 1497 ("As is true in a number of other contexts, such as compulsory counterclaims, crossclaims, and certain third-party claims, the search under Rule 15 (c) is for a common core of operative facts in the two pleadings.").  This formulation is consistent with prior analysis by our Court of Appeals:

> [T]he question of relation back of the amendment turns on fair notice of the *same general fact situation* from which the claim arises.  It is apparent that the strict rule of no relation back of the amendment to the time of filing the original complaint because of the assertion of a new cause of action is no longer applicable unless the causes of the action are not only different but *arise out of wholly different facts*.

*Jensen v. Engler*, 317 Ga. App. 879, 883 (1) (733 SE2d 52) (2012) (citation and punctuation omitted; emphasis in original).  See also *Sam Finley, Inc.*, 135 Ga. App. at 18, 20 (apparently the first Georgia case to use this language, based on an extensive quote from Moore's Federal Practice).

10

The United States Supreme Court has recognized that, in a case where "[t]here was but one episode-in-suit," and no "separate episodes" at a "different time and place," an "amendment related back, and therefore avoided a statute of limitations bar, even though the amendment invoked a legal theory not suggested by the original complaint and relied on facts not originally asserted." *Mayle*, 545 U. S. at 659-660 (explaining *Tiller v. Atlantic Coast Line R. Co.*, 323 U. S. 574, 580-581 (65 SCt 421, 89 LE 465) (1945)). In *Tiller*, the Supreme Court emphasized that both the original and amended complaints "related to the same general conduct, transaction and occurrence which involved" the alleged injury and that the defendant "had notice from the beginning that [the plaintiff] was trying to enforce a claim against it because of the events leading up to" that injury on its property. 323 U. S. at 581. Accordingly, we will examine whether the factual allegations in Thomas's original complaint and in the new imputed liability claim in her second amended complaint are close in time, place, and subject matter, and involve events leading up to the same injury, such that there was but a single "episode-in-suit." See *In re Olympia Brewing Co. Securities Litigation*, 612 FSupp. 1370, 1373 (N.D. Ill. 1985) (relying on *Tiller* and other federal authority); *Porter v. Decatur Mem. Hosp.*, 882 NE2d 583, 592-593 (Ill.

11

2008) (looking to *Tiller* and *Olympia Brewing*); 27A Tracy Bateman et al., Federal Procedure, Lawyers Edition § 62:319 (June 2018 Update) (citing *Olympia Brewing*).

Thomas's original complaint alleged that hospital nurses were involved in her care and treatment at the hospital's emergency room following the motor vehicle accident and that the negligent acts and omissions of two doctors caused Thomas to be discharged just three-and-a-half hours later with a dangerously unstable spine that resulted in serious injury after hospital personnel removed her cervical collar. The new imputed liability claim in Thomas's second amended complaint alleged that this same removal of the C-collar was the negligent act of a hospital nursing employee in violation of a hospital policy. These facts alleged in Thomas's second amended complaint occurred at the same time as certain facts in the original complaint, near the end of the three-and-a-half hour time frame of the treatment preceding the alleged injury. Thus, the relevant factual allegations were quite close in time, to say the least. They also occurred at the exact same location, and they involved the same general subject matter, i.e., the negligent treatment of Thomas's dangerously unstable spine. Finally, the allegations were part of the same events that led up to the

same ultimate injury for which Thomas is seeking damages.  See *Porter*, 882 NE2d at 593.  Cf. *Moore v. Baker*, 989 F2d 1129, 1132 (11th Cir. 1993) ("The alleged acts of negligence occurred at different times and involved separate and distinct conduct.").  As a result of these close factual connections between the relevant allegations, they amounted to a single "episode-in-suit," sharing a "common core of operative facts."  The fact that Thomas's second amended complaint invoked a legal theory, the imputed simple negligence of the hospital nurse who removed the C-collar, that was not in the original complaint does not prevent this new claim from relating back.  See *Mayle*, 545 U. S. at 659; 6A Wright & Miller, supra at § 1497 ("The fact that an amendment changes the legal theory on which the action initially was brought is of no consequence if the factual situation upon which the action depends remains the same and has been brought to defendant's attention by the original pleading.").  Nor is relation back foreclosed by the original complaint's omission of an allegation that a nurse's negligent conduct caused or contributed to Thomas's discharge with a dangerously unstable spine and to the ultimate injury that resulted, as "personal injury plaintiffs often cannot pinpoint the precise cause of an injury prior to discovery." *Mayle*, 545 U. S. at 660.

For the same reasons, relation back is not prevented by the fact that Thomas's second amended complaint alleged that the hospital was vicariously liable for the conduct of a different individual than the individuals on whose conduct the original claim of imputed liability against the hospital was based. See *Maraj v. North Broward Hosp. Dist.*, 989 S2d 682, 686 (Fla. App. 2008) (where the plaintiff sued two emergency room physicians and a hospital as vicariously liable for their acts, an amended claim against a previously unnamed radiologist arose out of the same occurrence under a Florida rule very similar to OCGA § 9-11-15 (c)); *Cammon v. West Suburban Hosp. Med. Center*, 704 NE2d 731, 737 (Ill. App. 1998) (Illinois' very similar relation back provision was triggered by an amended complaint against a hospital for vicarious liability alleging different conduct by different persons than was alleged in support of the original claims against the hospital.). See also *Miller v. Warren Hosp.*, 2016 WL 3509305 (D. N.J. 2016) (new claim against hospital for vicarious liability for previously unnamed health providers related back under the federal rule to the original complaint that named only a single doctor); *Carlson v. Countryside Manor Healthcare Facility*, 2018 WL 2471283 *5 (Conn. Super. Ct. 2018) (addition of nursing staff as additional actors to a vicarious liability claim for the

14

acts of a doctor related back because, "[a]lthough there are different actors and possibly different standards of care, . . . [t]he acts committed arose out of the same factual situation[;] . . . [t]he alleged events occurred during the same period of time, occurred at the same location, and resulted in the identical injury"); *Lloyd v. Wollin*, 2017 IL App. (1st) 162546-U (Ill. App. 2017) (applying *Porter* and *Olympia Brewing* to hold that a new vicarious liability claim against a hospital for a nurse's conduct related back to a previous vicarious liability claim against the hospital for a doctor's conduct during the same emergency room visit). Cf. *Weber v. Freeman*, 3 S3d 825, 834 (Ala. 2008) (under Alabama's very similar provision, no relation back where the plaintiff "was seeking to add new facts and a new claim that the surgery center was vicariously liable for a different doctor on a different day from those actions that formed the basis of the claims asserted in the [earlier] complaint[s]").

Accordingly, we conclude that the imputed liability claim in Thomas's second amended complaint relates back to the date of her original complaint pursuant to OCGA § 9-11-15 (c) and that, as a result, that new claim is not barred by the applicable two-year statute of limitation. The Court of Appeals, therefore, correctly reversed the trial court's dismissal of Thomas's new imputed

15

liability claim as time-barred.[5]  We note that the hospital asserted in a brief in support of its motion to dismiss that, contrary to the allegations of the second amended complaint, the new imputed liability claim actually constituted a claim of the nurse's professional negligence rather than simple negligence and, consequently, was subject to dismissal for Thomas's failure to file a supporting expert affidavit under OCGA § 9-11-9.1.  The trial court, however, did not rule on that separate issue, instead assuming that the new claim was based on allegations of the nurse's simple negligence, and we express no opinion on it at this time.  Cf. *Cammon*, 704 NE2d at 738 ("Having determined that the claims asserting [the hospital] is vicariously liable . . . are not time-barred, we must next determine whether these claims were properly dismissed by reason of the plaintiff's failure to comply with [the statute requiring an expert affidavit].").

Judgment affirmed.  Melton, P. J., Benham, Hunstein, Nahmias, Blackwell, Boggs, Grant, JJ., and Judge Dean Carlos Bucci concur.  Peterson, J., not participating.

---

[5] To the extent that *Thomas v. Med. Center of Central Ga.*, 286 Ga. App. 147 (648 SE2d 409) (2007), which never cited OCGA § 9-11-15, much less analyzed that statute, is inconsistent with our specific holding in this case, it is hereby disapproved.

Decided June 29, 2018.

Certiorari to the Court of Appeals of Georgia — 340 Ga. App. 70.

Huff Powell & Bailey, Brian K. Mathis; Smith, Gambrell & Russell, Leah Ward Sears, Edward H. Wasmuth, Jr., for appellant.

Garland, Samuel & Loeb, Robin N. Loeb, Anne H. Coolidge-Kaplan, for appellee.

Allen & McCain, Hunter S. Allen, Jr., Layne Zhou; Charles M. Cork III, amici curiae.